UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                            )
MELISSA TYLER on behalf of  )
herself and all others      )
similarly situated,         )
                            )
              Plaintiffs,   )
                            )
         v.                 )        CIVIL ACTION
                            )        NO. 11-10920-WGY
MICHAELS STORES, INC.       )
                            )
              Defendants.   )
_____ )
```

MEMORANDUM AND ORDER

YOUNG, D.J.                                    January 6, 2012


I.   **INTRODUCTION**

     [F]or all its faults, the civil justice system remains a
     remarkable achievement.  It is there that an individual
     who is injured, neither wealthy nor well connected, can
     hail a powerful adversary into court on equal footing and
     ask the court to hold it accountable for its wrongful
     conduct.
          Only in an American courtroom — not in legislative
     chambers or executive suites — can an individual seek
     full redress, standing at the bar on an equal basis with
     a powerful and influential adversary.  The political and
     economic advantages that one might enjoy in other arenas
     dissolve in the courtroom.  That [is] something that we
     should not ever look to give up.

Robert S. Peck, Emerging Civil Justice Issues (Dec. 5, 2010), in

7 J.L. Econ. & Pol'y 195, 195-96 (2010).

     Here, a dispute between a determined shopper and a

multistate retail chain gives rise to a case of first impression.

The issue is one of construction of a Massachusetts statute, a matter of law.  Melissa Tyler ("Tyler") brings this suit against Michaels Stores, Inc. ("Michaels") for violation of Massachusetts General Laws, chapter 93, section 105(a) (the "Act" or "Section 105(a)").  Tyler has sued on behalf of herself and a putative class, claiming that Michaels illegally requested customers' ZIP codes when processing their credit card transactions in violation of the Act.  She brings a three count complaint alleging that the violation of the Act amounted to a per se violation of Massachusetts General Laws, chapter 93A, section 9, caused unjust enrichment, and entitles Tyler to declaratory relief pursuant to 28 U.S.C. §§ 2201-2202.  Michaels has filed a motion to dismiss the complaint in its entirety, which motion is presently before this Court.  Michaels argues that Tyler has failed to plead a violation of the Act, allege a legally cognizable injury, and assert facts sufficient to establish unjust enrichment or to warrant declaratory relief.  Michaels denies that customers' ZIP codes constitute "personal identification information" or that the retailers's electric credit card terminal creates a "credit card transaction form" as those phrases are used in the Act.

### A.   Procedural Posture

Tyler filed a putative class action on May 23, 2011 against Michaels.  Class Action Compl. ("Compl."), ECF No. 1.

Subsequently, on July 22, 2011, Michaels filed the present motion to dismiss. Def.'s Mot. Dismiss ("Michaels' Mot."), ECF No. 9. On September 2, 2011, Tyler filed her memorandum in opposition to Michaels' motion to dismiss. Mem. L. Opp'n Def.'s Mot. Dismiss ("Tyler's Mem."), ECF No. 15. On September 16, 2011, Michaels filed its reply memorandum. Reply Supp. Def.'s Mot. Dismiss, ECF No. 17. On September 30, 2011, Tyler filed her sur-reply. Sur-Reply Opp'n Def.'s Mot. Dismiss Compl. ("Sur-Reply"), ECF No. 18. This Court heard oral arguments on the motion on October 20, 2011. Michaels' motion to dismiss is presently before this Court.

### B.  Factual Allegations

On several occasions during the past year, Tyler made credit card purchases at Michaels in Everett, Massachusetts, at which she was asked to provide her ZIP code number. Compl. ¶ 6. Tyler provided the information, under the mistaken impression that she was required to do so to complete the transaction. Id. ¶¶ 6, 20. Tyler alleges that Michaels' employees entered her and other customers' ZIP codes on the computerized check-out register used to process the point-of-sale transaction. Id. ¶ 20. The cash register created an electronic "form" containing the credit card number, the card holder's name, and ZIP code. Id. ¶¶ 7, 20.

The credit card issuer did not require Michaels to request its customers' ZIP codes to process their transactions, id. ¶ 1,

nor did Michaels request the ZIP code for verification of the card holder's identity, <u>id.</u> Rather, Michaels used Tyler's name and ZIP code in conjunction with other commercially available databases to find her address and phone number. <u>Id.</u> ¶ 21. Tyler then received unwanted marketing materials from Michaels. <u>Id.</u> ¶ 6.

### C. Federal Jurisdiction

Jurisdiction is proper under 28 U.S.C. § 1332(d). There is minimal diversity among the parties (Tyler is domiciled in Massachusetts and Michaels is domiciled in Delaware and Texas), there are more than 100 class members, and the amount in controversy is in excess of $5,000,000, exclusive of interest and costs.

## II. ANALYSIS

### A. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Ashcroft</u> v. <u>Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citations omitted) (internal quotation marks omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action

will not do.'"   Id.  (citations omitted).   Dismissal is proper

"if the facts lend themselves to no viable theories of recovery."

Luc v. Wyndham Mgmt. Corp., 496 F.3d 85, 88 (1st Cir. 2007).

Here, the parties present differing views on purely legal

questions of statutory interpretation.   See Rhode Island v.

Narragansett Indian Tribe, 19 F.3d 685, 691 (1st Cir. 1994) ("The

search for statutory meaning inevitably reduces to a pure

question of law.").   Unlike factual allegations, a pleading's

legal conclusions are not entitled to the assumption of truth.

Ashcroft, 129 S. Ct. at 1949-50.   "Unless specially defined, the

legislature's words are generally deemed to carry their plain and

ordinary meaning."   In re Shamus Holdings, LLC, 642 F.3d 263, 265

(1st Cir. 2011) (citing Boivin v. Black, 225 F.3d 36, 40 (1st

Cir. 2000)).

**B.   Interpreting The Statute**

Here, the underlying facts necessary to resolve the issues

are not in serious dispute.   Rather, the statutory interpretation

of Section 105(a), and the inferences and conclusions of law to

be drawn from the facts form the center of the dispute.

Section 105(a) provides:

No person, firm, partnership, corporation or other
business entity that accepts a credit card for a business
transaction shall write, cause to be written or require
that a credit card holder write personal identification
information, not required by the credit card issuer, on
the credit card transaction form. Personal identification
information shall include, but shall not be limited to,
a credit card holder's address or telephone number.   The

> provisions of this section shall apply to all credit card transactions; provided, however, that the provisions of this section shall not be construed to prevent a person, firm, partnership, corporation or other business entity from requesting information that is necessary for shipping, delivery or installation of purchased merchandise or services or for a warranty when such information is provided voluntarily by a credit card holder.

Mass. Gen. Laws ch. 93, § 105(a).  Because Tyler's complaint is predicated on an alleged violation of the Act, this Court must decide whether a ZIP code constitutes "personal identification information" in a credit card transaction, and whether the retailers's electronic card terminal creates a "credit card transaction form" into which the retailer writes customers' ZIP codes.

### 1.    A ZIP Code Constitutes Personal Identification Information in a Credit Card Transaction

Section 105(a) prohibits any person or business from writing "personal identification information" not required by the credit card issuer.  Mass. Gen. Laws ch. 93, § 105(a).  The Act does not define the words "personal identification information," however, it explains that "[p]ersonal identification information shall include, but shall not be limited to, a credit card holder's address or telephone number."  Id.

Michaels contends that nowhere in the Act is a ZIP code classified as personal identification information.  Michaels further alleges that unlike an address or telephone number that

identifies an individual, a ZIP code is a numbered coding system that only identifies a post office geographic area.[1]

Conversely, Tyler argues that this Court ought be persuaded to follow the decision of the California Supreme Court in Pineda v. Williams-Sonoma Stores, Inc., 246 P.3d 612 (Cal. 2011) and reach the same conclusion that it reached, viz. that a ZIP code is part of an address and that the statute was intended to include all components of the card holder's address within the meaning of "personal identification information."   246 P.3d at 616-18.   Tyler asserts that Section 105(a) of Massachusetts General Laws is on all fours with the California Statute[2] and, as

---

[1] According to the United Stated Postal Service ("USPS") in its Domestic Mail Manual (updated July 5, 2011), the purpose of the ZIP (Zone Improvement Plan) code is to have "a numbered coding system that facilitates efficient mail processing.   The USPS assigns ZIP Codes [and] [a]ll Post Offices are assigned at least one unique 5-digit ZIP Code."   Def.'s Mem. Supp. Mot. Dismiss, Ex. B, ¶ 1.8.1, ECF No. 10-1.   By contrast, the most complete ZIP code is a nine-digit code, called ZIP+4; "[t]ogether, the final four digits identify geographic units such as a side of a street between intersections, both sides of a street between intersections, a building, a floor or group of floors in a building, a firm within a building, a span of boxes on a rural route, or a group of Post Office boxes to which a single USPS employee makes delivery."   Id. at ¶ 1.8.2.   There is no evidence in the record that Michaels requested a ZIP+4 code from any of its customers.

[2] California Civil Code § 1747.08(a) provides:

    [N]o person, firm, partnership, association, or corporation that accepts credit cards for the transaction of business shall do any of the following:
    (1) Request, or require as a condition to accepting the credit card as payment in full or in part for goods or services, the cardholder to write any personal

7

did the _Pineda_ court, this Court ought conclude that Michaels cannot require a customer's ZIP code, a component of her address, as a means of discovering the customer's full address and send unwanted marketing materials.

The _Pineda_ court held that a ZIP code constitutes "personal identification information" even though it may describe an area with an undefined group of individuals, noting that addresses and telephone numbers are not always specific to an individual, but often refer to multiple persons in a house or workplace.  _Id._ at 617.  The court also held that a the ZIP code is "information unnecessary to the sales transaction" and is "similar to [the card holder's] address or telephone number," because "it can be used, together with the cardholder's name, to locate his or her full address."  _Id._ (citations omitted).  The California Supreme Court adopted this broad construction of "personal identification information" in light of the legislative history of the California statute which demonstrates that its goal was preventing retailers from directly or indirectly obtaining personal identification information for marketing purposes.  _Id._ at 617-18.

This Court holds that the General Court of Massachusetts intended Section 105(a) to have a much narrower scope than the

---

identification information upon the credit card transaction form or otherwise.

California statute.  There is no evidence in the record that the Massachusetts legislature was concerned about merchants locating the addresses of their customers through an investigative process.  Instead, the main concern of the Massachusetts legislature was to prevent exposing the customer to an unnecessary risk of identity fraud by using personal identification information on the transaction form, not otherwise required for the credit card transaction.

The legislative history of Section 105(a) shows that the legislature's main concern was to prevent fraud.  The State House News Service summarized the testimonies of various individuals before the Commerce and Labor Committee, which focused on the need to prevent identity theft balanced against companies' legitimate need for some verifying information.

A representative of Massachusetts Public Interest Research Group noted that "most retailers still require personal information, including home phone and address, to process credit card purchases. . . [, which] can be used to defraud the purchaser."  Mem. L. Supp. Def.'s Mot. Dismiss (Michaels' Mem."), Ex. A, Consumer Protection: Hr'g Before H. Comm. Commerce & Labor, 1991 Leg., 177th Sess. (Mass. 1991), ECF No. 10-1.  A public school teacher in Brookline explained how "drivers license information written on [his] Master Card receipt was used to fraudulently purchase over $12,000 worth

of goods in his name." Id.  A representative of the Retailer's Association of Massachusetts, however, justified the verification of the cardholder's identity stating that "merchants need to protect themselves from credit card . . . fraud," and emphasizing "the use of drivers' licenses to verify signatures. Id.

Section 105(a) adopts the essence of these testimonies.  The Act strikes a balance, prohibiting the merchant from recording on the transaction form any unnecessary personal identification information, while allowing the merchant to request the purchaser's personal information for other purposes unrelated to the credit card transaction, viz. information "necessary for shipping, delivery or installation of purchased merchandise or services or for a warranty."  Mass. Gen. Laws ch. 93, § 105(a).

Tyler argues that the Massachusetts legislature intended to shield consumers' privacy from receiving unwanted marketing, pointing out that the legislature added Section 105(a) to the General Laws under the expansive caption "Consumer Privacy in Commercial Transactions."  1991 Mass. Legis. Serv. ch. 414, § 1 (West).  Tyler's reliance on this caption is misplaced.  Title, headings and captions are accorded limited weight in statutory construction.  Kaplan v. Contributory Ret. Appeal Bd., 51 Mass. App. Ct. 201, 205 (2001) (holding that headings cannot control the plain provisions of the statute, "although they may shed

light on ambiguous language" (citing American Family Life
Assurance Co. v. Commissioner of Ins., 388 Mass. 468, 474
(1983)); see also Bay Colony Mktg. Co. v. Fruit Salad, Inc., 41
Mass. App. Ct. 662, 666 n.5 (1996).  There is no indication in
Section 105(a)'s caption alone that the Massachusetts legislature
intended to create a statutory privacy interest so broad as to
shield a consumer from receiving unwanted marketing materials.
The language of the caption makes clear that Section 105(a) is
focused on "[c]onsumer [p]rivacy" in the context of the
"[c]ommercial [t]ransactions" themselves.  To that extent, the
caption does not "shed light" on an otherwise ambiguous statute.
Clarity comes, rather, from the legislative history discussed
above, which shows the legislature was focused on the issue of
identity fraud.

It is not in dispute that Michaels did not request Tyler's
ZIP code for shipping, installation, or other enumerated
authorized purposes.  The issue becomes whether the ZIP code can
be used, either alone or in conjunction with other information,
as personal identification information in the context of credit
card transactions, and whether recording this information may
pose a risk of identity fraud.

Tyler argues that because retailers can use a customer's
name and ZIP code to later independently investigate and obtain a
complete mailing address, allowing the retailer's initial

11

collection of the ZIP code "nullify the protection afforded by Section 105." Tyler's Mem. 5. While personal identification information under Section 105(a) is "not [] limited to" an address or telephone number, this Court is not persuaded by Tyler's argument that the Massachusetts legislature intended the Act to sweep so broadly as to include any component of the address simply because the ZIP code could later be used (in conjunction with other data) to obtain the full address. Section 105(a) was not enacted to prevent retailers from gathering customers' information through other sources independent of the credit card transaction.[3] Nevertheless, this Court holds that a ZIP code can indeed be personal identification information under Section 105(a).

In the context of criminalizing identity theft and identity fraud, that the apposite Massachusetts statute defines "personal identifying information" as:

> [A]ny name or number that may be used, alone or in
> conjunction with any other information, to assume the

---

[3] On the other hand, while the language of Section 105(a) protects only the information recorded "in the transaction form," this does not mean, as Michaels contends, see Michaels' Mem. 10, that the Act is concerned only with what occurs at the time of the credit card transaction. Timing is irrelevant, provided there is a causal relationship between the act of recording the information ("writes, cause to be written or require") and the place where this information is written (the "transaction form"). Thus, a retailer cannot avoid the reach of Section 105 by temporarily writing a customer's personal identification information on a separate document and later incorporating it into a "transaction form."

12

> identity of an individual, including any name, address, telephone number, driver's license number, social security number, place of employment, employee identification number, mother's maiden name, demand deposit account number, savings account number, credit card number or computer password identification.

Mass. Gen. Laws ch. 266, § 37E(a).[4]  This Court disagrees with Michaels' argument that this definition "does not include ZIP codes within its scope."  See Michaels' Mem. 6.  The ZIP code may be used (in conjunction with other data) to identify a specific individual.  Under Chapter 266, Section 37E(a), a criminal fraud may be committed when a person uses any "number," e.g. a ZIP code, coupled with any other card holder information to assume the identity of the individual.

In this way, the input of a ZIP code during a credit card transaction is the equivalent to the input of a Personal Identification Number ("PIN number") in a debit card transaction.[5]  E.g., Commonwealth v. Ryan, 79 Mass. App. Ct. 179,

---

[4] A Federal statute that criminalizes identity theft and identity fraud uses a similar definition.  See 18 U.S.C. § 1028(d)(7). The term "means of identification" in 18 U.S.C. § 1028(d)(7) is defined as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual."

[5] Merchants who accept credit cards are contractually bound to comply with the card issuer's operating regulations.  These "regulations prohibit merchants and acquirers from storing magnetic stripe data from the back of credit cards, in whole or in part, after a transaction is completed."  See Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc., 455 Mass. 458, 463 (2009).  According to Visa's operating regulations, a merchant may require a ZIP code for verification of the card holder's

184 & n.7 (2011) (holding that "a debit card is the functional equivalent of a credit card" for the purposes of assessing a scheme involving theft of card data) (citing Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc., 455 Mass. 458, 462-63 (2009)); see United States v. Hristov, Criminal No. 10-10056-PBS, 2011 WL 1443348, at *4 (D. Mass. Apr. 14, 2011) (Saris, J.) (explaining that because "[t]he PIN does not appear on the magnetic strip and is either selected by the customer or issued by the bank," cameras in conjunction with skimmers were used to capture the PIN number of cards); see also United States v. Stepanian, 570 F.3d 51, 53 (1st Cir. 2009) (altering terminals to record "debit card numbers, PIN codes, and credit card numbers whenever customers swiped their cards to make purchases" allowed thieves to steal roughly $132,300).

Because in some circumstances the credit card issuer may require the ZIP code to authorize a transfer of funds, as a debit card issuer requires a PIN number, both a ZIP code and a PIN

---

identity (e.g., in an Automated Fuel Dispenser transaction), but the merchant is prohibited from "requir[ing] the Cardholder's ZIP code as a condition of honoring the Card." See Visa Int'l Operating Regulations 359, 450 (2011), available at http://corporate.visa.com/_media/visa-international-operating-regulations.pdf. MasterCard's operating regulations, in contrast, provide that the ZIP code is part of the card holder's identification information and a merchant "may require the Cardholder's ZIP or postal code to complete a Cardholder-Activated Terminal (CAT) Transaction." See MasterCard Rules § 5.8.4 (2011), available at http://www.mastercard.com/us/merchant/pdf/BM-Entire_Manual_public.pdf

number may be used fraudulently to assume the identity of the card holder.  Just as a merchant who records a PIN number in the transaction form puts the customer at risk of identity fraud, so too does a merchant who records a ZIP code in the transaction form.  Therefore, this Court holds that ZIP code numbers are "personal identification information" under Section 105(a), because a ZIP code number may be necessary to the credit card issuer to identify the card holder in order to complete the transaction.  This construction is more consistent with the Massachusetts legislative intent to prevent fraud than a statutory construction that simply views the ZIP code as a component of an address that later can be used to obtain a full address for marketing purposes.

## 2. A Retailers's Electronic Card Terminal May Contain a Credit Card Transaction Form

Section 105(a) prohibits any person or business to "write personal identification information . . . on the credit card transaction form."  Mass. Gen. Laws ch. 93, § 105(a).  The Act does not define the meaning of "transaction form."

Tyler has alleged that Michaels' cashier entered Tyler's ZIP code, together with her credit card number and name, into the electronic card terminal, which contained a computerized "transaction form."  See Tyler's Mem. 6.  Michaels contends that the language of the Act does not include an electronically stored transaction form, such as a database, and that the "transaction

15

form" must be a physical document, e.g. a printed slip or receipt.[6]  Michaels' Mem. 11-12.

For several reasons, this Court rejects Michaels' argument. The Act provides that Section 105(a) "shall apply to all credit card transactions," Mass. Gen. Laws ch. 93, § 105(a), thus the plain meaning of the words naturally includes all such transactions, whether they are processed manually, electronically, or by some other method.  See In re Shamus Holdings, 642 F.3d at 265 ("Unless specially defined, the legislature's words are generally deemed to carry their plain and ordinary meaning." (citing Boivin, 225 F.3d at 40)).  The point-of-sale transaction terminal may allow the merchant to write the information into the machine to be electronically stored.  See BJ's Wholesale Club, Inc., 455 Mass. at 463 ("[The] transaction processing software used by BJ's [] permanently stor[ed] the magnetic stripe data in transaction logs.").  The natural language of the Act does not distinguish between paper and electronic transaction forms, and an individual who creates an electronic form violates the Act just as does an individual who

_____

[6] Michaels points out that the California Supreme Court in Pineda did not consider the meaning of the term "credit card transaction form," because the California statute provides a broad prohibition against writing a customer's information "upon "the credit card transaction form or otherwise," Cal. Civ. Code § 1747.08(a)(1), while the Massachusetts Act only prohibits writing "on the credit card transaction form," Mass. Gen. Laws ch. 93, § 105(a).  Michaels' Mem. 11.

writes on a paper form.  Both methods may create a transaction form and pose the same risk of identity fraud to the customer. Therefore, the plain meaning of the words "credit card transaction form" under Section 105(a) refer equally to an electronic or a paper transaction form.

Furthermore, following the language of Section 105(a), the "credit card transaction form" shall not contain information other than information "required by the credit card issuer." Mass. Gen. Laws ch. 93, § 105(a).  Whether the credit card is processed manually or by swiping the magnetic stripe, the card issuer collects information to authorize the transaction in accordance with the card issuer's requirements.  The transaction receipt, i.e., the printed copy recording the transaction for the customer, may contain information different than the "transaction form."  For example, federal law requires that the card holder's printed receipt must suppress or disguise the credit card number other than the last five digits and omit the card's expiration date.  15 U.S.C. § 1681c(g); see generally Hristov, 2011 WL 1443348, at *4 (describing the information stored in the magnetic strip of a debit card necessary to authorize the transfer of moneys).  In other words, the transaction form includes the template in which the credit card information is entered, whether it is entered manually or electronically, and the receipt or slip is an imprinted or printed copy of the transaction form at the

17

end of the transaction, which the card holder retains in the
event of a disputed charge.   The receipt is a printout of the
permissible information on the transaction form, but it is not
the transaction form itself.[7]

### 3. Tyler Sufficiently Alleges Violations of Section 105(a)

To prove a violation of Section 105(a), the plaintiff must
show that the defendant (1) wrote or caused to be written, (2)
personal identification information, (3) on a credit card
transaction form, (4) which information is not required by the
credit card issuer.  Mass. Gen. Laws ch. 93, § 105(a).

Here, Tyler has sufficiently alleged that she made several
credit card purchases at Michaels in Everett, Massachusetts,
where she was asked to provide her ZIP code number.  A ZIP code
constitutes personal identification information within the
meaning of Section 105(a).  Tyler alleges that Michaels'
employees entered her ZIP code in an electronic transaction form
in the computerized check-out register.  The Act does not
distinguish between electronic transaction forms and paper forms;
recordation in either form constitutes a violation of Section

---

[7] If the personal identification information is recorded on
the receipt, this would also be a violation of Section 105(a),
because the Act provides that a merchant shall not "cause to be
written or require that a credit card holder write" such
information on the transaction form.  Mass. Gen. Laws ch. 93, §
105(a).  While the receipt may be a redacted copy of the
transaction form, it too is a "transaction form" as that phrase
is used in the Act.

105(a).  Tyler also alleges that Michaels does not request the
ZIP code for verification of the card holders' identity.  It is
reasonable to infer based on this allegation that the credit card
issuer did not require Tyler's ZIP code to verify her identity,
but that Michaels independently caused the ZIP code to be
disclosed.  Therefore, Tyler has sufficiently alleged facts in
support of her claim that Michaels violated Section 105(a).

>    **C.  Tyler Fails to Allege a Causal Connection Between
>         Michaels' Deceptive Act and Any Injury Cognizable Under
>         Chapter 93A**

Section 105(d) provides that "[a]ny violation of the
provisions of this chapter shall be deemed to be an unfair and
deceptive trade practice, as defined in section 2 of chapter
93A."  Mass. Gen. Laws ch. 93, § 105(d).  Chapter 93A provides
that "[a]ny person . . . who has been injured by another person's
use or employment of any method, act or practice declared to be
unlawful by section two . . . may bring an action in the superior
court . . . ."  Mass. Gen. Laws ch. 93A, § 9(1).  A successful
claim under Chapter 93A thus requires a showing of (1) a
deceptive act or practice on the part of the defendant; (2) an
injury or loss suffered by the consumer; and (3) a causal
connection between the defendant's deceptive act or practice and
the consumer's injury.  See Hershenow v. Enterprise Rent-A-Car
Co. of Bos., Inc., 445 Mass. 790, 797 (2006); Casavant v.
Norwegian Cruise Line, Ltd., 76 Mass. App. Ct. 73, 76 (2009).  "A

consumer is not, however, entitled to redress under [Chapter 93A], where no loss [economic or noneconomic] has occurred." <u>Hershenow</u>, 445 Mass. at 802.

The scope of cognizable injury under chapter 93A is somewhat uncertain. On the expansive end of the spectrum is <u>Leardi</u> v. <u>Brown</u>, 394 Mass. 151 (1985), which is still good law. In <u>Leardi</u>, the court held that a deceptive landlord's contract caused an injury to tenants because the terms of the contract violated the statutory lease provisions and misled the tenants as to the landlord's obligation to maintain the premises in a habitable condition. <u>Id.</u> at 156-57. Recent case law has refused to overrule <u>Leardi</u> because the "illegal lease terms acted as a powerful obstacle to a tenant's exercise of his legal rights" and, but for the unlawful contract provisions, tenants would not have been placed in a worse and untenable position. <u>See</u> <u>Hershenow</u>, 445 Mass. at 800.

More recently, in <u>Aspinall</u> v. <u>Phillip Morris Cos., Inc.</u>, 442 Mass. 381 (2004), the court held that deceptive advertising that "could reasonably be found to have caused a person to act differently from the way he [or she] otherwise would have acted" constituted cognizable injury under chapter 93A. <u>Id.</u> at 394 (citations omitted) (internal quotation marks omitted). Similarly, in <u>Iannacchino</u> v. <u>Ford Motor Co.</u>, 451 Mass. 623 (2008), the court held that defective door latches in a vehicle,

which had not yet caused harm to consumers, constituted a
compensable injury under chapter 93A because the manufacturer's
noncompliant vehicles were worth less due to this risk than what
consumers were caused to pay. Id. at 630-31.

In contrast, at the more restrictive end of the spectrum is
Hershenow, where the court held that an automobile rental
contract did not cause an injury to the customer based solely on
the fact that the collision damage waiver purchased by the rentor
contained onerous restrictions in violation of state law. In
Hershenow, the court stated that a rental car had to have been
damaged and the onerous restrictions applied before the renter
could seek recovery pursuant to the unlawful provision. 445
Mass. at 800. Subsequent case law follows the view that, absent
deception causing an injury, a potential risk does not
"constitute[] damages merely because it existed at an earlier
stage," therefore "an undisclosed risk that [was] never realized
and [could] never be realized in the future" is not an injury
under chapter 93A. Rule v. Fort Dodge Animal Health, Inc., 607
F.3d 250, 254 (1st Cir. 2010).

In the area of identity fraud, a judge in this district has
similarly held that where there were no instances of actual data
loss or misappropriation, the failure to comply with minimum
statutory security standards did not cause cognizable injury
because the added risk of identity fraud did not actually cause

harm to the plaintiff.  <u>Katz</u> v. <u>Pershing, LLC</u>, Civil Action No.
10-12227-RGS, 2011 WL 3678720, at *4 (D. Mass. Aug. 23, 2011)
(Stearns, J).

    As explained above, Tyler has sufficiently alleged that
Michaels' conduct was deceptive because Michaels violated Section
105(a) by writing customers' ZIP codes on an electronic
transaction form when the credit card issuer did not require the
ZIP code to process the transaction.  Michaels' violation of the
Act thus constitutes a per se violation of chapter 93A.  Tyler
still has the burden of proving that this violation caused a
cognizable injury.

    Tyler's arguments as to her loss are unavailing.  Tyler
argues that Section 105(a) creates a legally protected privacy
interest "in not having her personal identification information
deceptively taken as part of a credit card transaction."  Tyler's
Mem. 10-11; 16.  But the Massachusetts legislature never intended
to create a free standing privacy right derived from Section
105(a); rather, Section 105(a) was enacted to prevent fraud.
Thus the simple fact of the statutory violation standing alone
constitutes no redressable injury.[8]

_____

    [8] The Court would reach the same conclusion were it to
analyze Tyler's complaint as a question of standing to sue.  To
have Article III standing to maintain an action in federal court,
a plaintiff bears the burden of alleging facts sufficient to
establish that "(1) [the plaintiff] has suffered an 'injury in
fact' that is (a) concrete and particularized and (b) actual or
imminent, not conjectural or hypothetical; (2) the injury is

fairly traceable to the challenged action of the defendant; and
(3) it is likely, as opposed to merely speculative, that the
injury will be redressed by a favorable decision." <u>Friends of
the Earth, Inc.</u> v. <u>Laidlaw Envtl. Servs. (TOC), Inc.</u>, 528 U.S.
167, 180-81 (2000) (citation omitted); <u>Coggeshall</u> v.
<u>Massachusetts Bd. of Registration of Psychologists</u>, 604 F.3d 658,
666 (1st Cir. 2010) (citing <u>Lujan</u> v. <u>Defenders of Wildlife</u>, 504
U.S. 555, 560-61 (1992). A challenge to standing, "which calls
into question [a court's] subject-matter jurisdiction, rests on
Federal Rule of Civil Procedure 12(b)(1)." <u>United Seniors Ass'n,
Inc.</u> v. <u>Philip Morris USA</u>, 500 F.3d 19, 23 (1st Cir. 2007).
Standing is a "threshold" question in every case; "[i]f a party
lacks standing to bring a matter before the court, the court
lacks jurisdiction to decide the merits of the underlying case."
<u>United States</u> v. <u>AVX Corp.</u>, 962 F.2d 108, 113 (1st Cir. 1992).

Here, Tyler contends that because Section 105(a) creates
legal rights and provides her with a private right of action (in
instances of loss of privacy under chapter 93A), she does not
need to allege an injury beyond the violation of those enumerated
rights. Tyler's Mem. 11-12.

The current Supreme Court jurisprudence is not entirely
clear as to whether a defendant's violation of a statute that
confers a private right of action in and of itself constitutes an
"injury in fact" to those protected under the statute. In <u>Warth</u>
v. <u>Seldin</u>, 422 U.S. 490 (1975), the Supreme Court stated that
"[t]he actual or threatened injury required by Article III may
exist solely by virtue of 'statutes creating legal rights, the
invasion of which creates standing . . . .'" <u>Id.</u> at 500 (citing
<u>Linda R.S.</u> v. <u>Richard D.</u>, 410 U.S. 614, 617 n.3 (1973). Later
in the same paragraph, the Supreme Court went on to state that
"Article III's requirement remains: the plaintiff still  must
allege a distinct and palpable injury to himself." <u>Id.</u> at 501.
More recently, the Supreme Court ruled in <u>Lujan</u> v. <u>Defenders of
Wildlife</u>, 504 U.S. 555 (1992), that "[t]he party invoking federal
jurisdiction bears the burden of establishing" that the plaintiff
"suffered an 'injury in fact' - an invasion of a legally
protected interest which is (a) concrete and particularized and
(b) 'actual or imminent, not conjectural or hypothetical.'" <u>Id.</u>
at 560-61 (citations omitted).

Clarity on this issue is likely forthcoming, since on June
20, 2011, the Supreme Court granted certiorari in <u>Edwards</u> v.
<u>First Am. Corp.</u>, 610 F.3d 514 (9th Cir. 2010), to review the
question whether plaintiffs who allege a statutory right
violation, but suffered no actual injury, have standing. <u>See</u>
<u>First Am. Fin. Corp.</u> v. <u>Edwards</u>, 131 S. Ct. 3022 (2011).

The First Circuit in <u>Conservation Law Found. of New England,</u>

<u>Inc.</u> v. <u>Reilly</u>, 950 F.2d 38, 40 (1st Cir. 1991), has held that a statutory violation for which a private right of action is conferred does not create standing without a plaintiff's additional showing of a "distinct and palpable injury" caused by the violation.  The court emphasized that "Congress may not expand by statute the standing limitations imposed upon it by Article III," <u>id.</u> at 41, and rejected the district court's holding that the statute's citizen-suit provision "remove[d] the prudential limits on standing," <u>id.</u>  The <u>Reilly</u> court therefore held that the plaintiffs did not have standing to obtain nationwide injunctive relief where they had ties only to a few federal facilities, with respect to which they had standing, and otherwise only alleged the general harm of "injury to plaintiffs' environmental interests" through the statutory violation.  <u>Id</u>; see <u>In re iPhone Application Litig.</u>, No. 11-MD-02250-LHK, 2011 WL 4403963, at *5 (N.D. Cal. Sept. 20, 2011) (holding that "[p]laintiffs have not identified a concrete harm from the alleged collection and tracking of their personal information sufficient to create injury in fact," where the plaintiffs merely stated general allegations about the defendants such as lost opportunity costs and value-for-value exchanges); <u>La Court</u> v. <u>Specific Media, Inc.</u>, No. SACV 10-1256-GW(JCGx), 2011 WL 2473399, at *3-*5 (C.D. Cal. Apr. 28, 2011) (holding that the court "lacks subject matter jurisdiction" because the plaintiffs have failed to allege the plausibility of an "injury in fact").

Moreover, at least in some cases where courts have held that a statutory violation alone constitutes an "injury in fact," the statute was clear that no additional injury beyond the violation itself was required for a private right of action.  <u>See</u> <u>In re Facebook Privacy Litig.</u>, 791 F. Supp. 2d 705, 712 (N.D. Cal. 2011) (holding that the plaintiffs had standing because the Wiretap Act creates a private right of action for any person whose electronic communication is "intercepted, disclosed, or intentionally used," and does not require any further injury).

The issue of Tyler's standing does not fall within any of the "gray areas" aforementioned, however.  Tyler's standing rests squarely on the private right of action conferred under Chapter 93A which states that "[a]ny person . . . <u>who has been injured</u> by another person's use or employment of any method, act or practice declared to be unlawful by section two . . . may bring an action in the superior court."  Mass. Gen. Laws ch. 93A, § 9(1) (emphasis added).  Thus, in direct contrast to <u>In re Facebook Privacy Litigation</u>, where the statute stipulated no additional injury provision, in the present case, the statute explicitly requires a plaintiff to have been injured by the statutory violation.  <u>See</u> <u>In re iPhone Application Litig.</u>, 2011 WL 4403963,

24

Tyler also argues that she was injured by the misappropriation of her valuable address information.  Id. at 18. The facts alleged by Tyler, taken as true, establish that Michaels recorded her name, credit card number, and ZIP code. Tyler does not allege that this recorded information was sold, thus potentially causing her an unreasonable risk of fraud, putting her in a worse and untenable position vis a vis Michaels, see Hershenow, 445 Mass. at 800, or diminishing her creditworthiness, see Iannacchino, 451 Mass. at 630-31.  Instead, Tyler argues that Michaels used Tyler's name and ZIP code in conjunction with other commercially available databases to ascertain her address and phone number.  Therefore, Tyler's own allegations suggest that, once her ZIP code was known, her full address could be derived from some other available database. There is no allegation that Michaels did not act legally in accessing such database.  Consequently, Tyler defeats her own argument that her address was misappropriated by Michaels. Drawing all reasonable inferences in favor of Tyler, her factual

---

at *6 ("Plaintiffs, in the instant case, do not allege a violation of an analogous statute [to the Wiretap Act in In re Facebook Privacy Litigation] which does not require a showing of injury.").  Because Tyler has not sufficiently pled any injury beyond Michael's violation of Section 105(a), Tyler lacks standing under an Article III analysis.

allegations simply do not support the conclusion that Michaels misappropriated Tyler's address.

Tyler further alleged injury in that she received unwanted mail.  This alleged injury actually makes some sense.  That is, drawing all inferences in Tyler's favor, it is a reasonable inference that learning Tyler's ZIP code allowed Michaels to obtain her full address, which in turn brought on what, to Tyler, no doubt seems to be a deluge of unwanted mail.  Even so, receiving unwanted commercial advertising through the mail is simply not an injury cognizable under chapter 93A, since Section 105(a) was enacted to prevent fraud.[9]

### D.   Tyler Failed to State Facts Sufficient to Sustain a Claim For Unjust Enrichment

To succeed in a claim for unjust enrichment, a plaintiff must show: "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under circumstances [which make such acceptance or retention] inequitable without payment for its value." Massachusetts Eye and Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 57 (1st Cir. 2009) (citing 26 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 68:5 (4th

---

[9] Michaels also raised the issue of Tyler's allegedly insufficient demand letter.  Given that the Court holds that Tyler's 93A claim otherwise falls for lack of injury, the issue of the demand letter is moot.

ed. 1993)).  "The benefit must be <u>unjust</u>, a quality that turns on the reasonable expectations of the parties."  <u>See</u> <u>Community Builders, Inc.</u> v. <u>Indian Motocycle Assoc., Inc.</u>, 44 Mass. App. Ct. 537, 560 (1998).  "Usually, that means that the parties were dealing with each other in such a way, or in such circumstances, that reasonable people would expect payment by the defendant to the plaintiff for some benefit conferred by the plaintiff on the defendant."  <u>Hessleton</u> v. <u>BankNorth, N.A.</u>, No. 03347, 2004 WL 1588255, at *3 (Mass. Super. Ct. May 11, 2004) (Billings, J.) (citing 12 Williston on Contracts § 1479 (3d ed. 1957)).

Tyler argues that she has stated a claim for unjust enrichment because "reasonable people would expect consideration" for the "valuable resource" of a customer's personal identification information.  Tyler's Mem. 19.  Yet, Tyler has not cited any Massachusetts case in support of her argument that a reasonable person would expect compensation for providing a ZIP code to a merchant.  Tyler claims that her ZIP code is valuable to Michaels, demonstrated by its effort to record its customers' ZIP codes in order to identify those customers in commercially available mailing lists.  <u>Id.</u> at 19-20.  The fact that Michaels had a policy of recording ZIP codes does imply that Michaels appreciated the value of accurate and updated lists of customers' addresses.  Arguably identifying the customers interested in Michaels' products out of thousands of other people on those

mailing lists has value to it.  This is different from saying,
however, that a single customer's ZIP code by itself has a value
to Michaels, without the independent work and cross-referencing
necessary to obtain the full address.  The process of constantly
updating the ZIP codes was not done by Tyler or any member of the
putative class; rather, the recording of the ZIP codes was done
by Michaels' employees.  Arguably the recording of these ZIP
codes constitutes a statutory violation, because certain credit
card issuers do not require Michaels to request customers' ZIP
codes to process the transaction.  Yet even so, there was no
unjust enrichment because Tyler has not sufficiently alleged that
reasonable people would expect to receive payment by the
defendant in these circumstances, and that, had Tyler been fully
informed, she would have requested payment for divulging her ZIP
code.  No facts are alleged that Michaels ever pays for ZIP
codes, or that reasonable people would expect payment for
revealing an individual ZIP code in a routine retail transaction.
Therefore, this Court holds that Tyler has failed to state
sufficient facts to sustain a claim for unjust enrichment.

### E.   Tyler Is Not Entitled to Declaratory Relief

Under the Declaratory Judgment Act, a district court "may
declare the rights and other legal relations of any interested
party seeking such declaration" in cases "of actual controversy.
. . , upon the filing of an appropriate pleading."  28 U.S.C. §

2201(a).  Federal courts "retain substantial discretion in deciding whether to grant declaratory relief."  Ernst & Young v. Depositors Econ. Prot. Corp., 45 F.3d 530, 534 (1st Cir. 1995).

As explained above, Tyler has failed here to plead sufficient facts to sustain either her chapter 93A claim or her unjust enrichment claim.  The Declaratory Judgment Act is not an independent grant of federal jurisdiction, see Katz v. Denn, Civil Action No. 05-40014-FDS, 2007 WL 763896, at *4 (D. Mass. March 12, 2007) (Saylor, J.) (citing Boston & Maine Corp. v. Brotherhood of Maint. of Way Emps., 94 F.3d 15, 20 (1st Cir. 1996); Preiser v. Newkirk, 422 U.S. 395, 402 (1975)), so dismissal of the underlying claims requires dismissal of the claim for declaratory relief as well.

## III. CONCLUSION AND REFLECTIONS

For these reasons, this Court GRANTS Michaels' motion to dismiss [ECF No. 9] in its entirety, and a judgment of dismissal shall enter one week from the date of the issuance of this memorandum of decision.[10]

---

[10] As this is a case of first impression, the week's hiatus is appropriate to allow either party to move for certification. A federal district court may certify a question for decision by the Supreme Judicial Court "if there are involved in any proceeding before it questions of law of [the Commonwealth of Massachusetts] which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of [the Supreme Judicial Court]."  Mass. Sup. Jud. Ct. R. 1:03, § 1.  This Court is aware that here, there is no

Since retailers so routinely request a customer's ZIP code at the point-of-sale in a credit card transaction, they ought note here that this Court holds Michaels potentially to have violated Section 105(a) if such request was made during a transaction in which the credit card issuer did not require such disclosure.  See supra note 5.  Relief has been denied here, however, because receipt of unwanted commercial mail does not fall within the scope of human activity that Section 105(a) was intended to prevent and, while irritating, is so inconsequential that the law does not stop to take note of it.[11]

This case thus constitutes an example of the balance between rights and remedies.  It well illustrates why rights and remedies need to remain proportional.  As Philip K. Howard, an acute observer of American legal institutions, has recently said so brilliantly:

---

controlling precedent, that the interpretation of Massachusetts General Laws, chapter 93, section 105(a) is purely a question of Massachusetts state law, and that the cases relied on herein are primarily those of the lower courts of the Commonwealth.  Should either Tyler or Michaels wish to bring a motion for certification, this Court will entertain it.  Mass. Sup. Jud. Ct. R. 1:03, § 2 (a question may be certified "upon the motion of any party to the cause").

[11] The result could well be different in a data breach case where identity theft were at issue.  There, the breach of Section 105(a) could well constitute a violation of a safety statute as to the persons the statute was designed to protect, i.e., negligence sufficient to get such a case to the jury.  See Berish v. Bornstein, 437 Mass. 252, 273 (2002) ("Although violations of a statute or regulations do not constitute negligence per se, they may provide evidence of negligence.").

[C]ivil justice is extraordinarily important in a free society.  When you have an anonymous interdependent society where people can't count on community norms, you need a system of justice that Americans trust, to enforce contracts and to hold people accountable if they act unreasonably so that people can go through the day following their star and not worrying about protecting themselves.

We need incentives for people to make sure they stop for the red lights and also that they will, when they're making products, comply with reasonable safety norms and that sort of thing.  Now, civil justice happens to be the mechanism by which we make those choices but we've been trained to think that civil justice is just a dispute resolution mechanism, and I submit that's not the case.  Its main goal is actually to be a part of a platform for a free society.  It's to enable people to make all these daily choices because again, the backdrop here is this reliable civil justice system that people can trust to enforce their contracts, and so on.

Now, if justice is not available, and big companies can get away with anything, or people can be abusive in their treatment of workers, then that undermines freedom because people are very nervous in their daily dealings because they're afraid they're going to be taken advantage of.  But the similar effect occurs if justice is over inclusive.  If any accident, if any disagreement in the workplace can have a similar effect, and you can be dragged into litigation for years, then similarly, people in their daily choices won't focus on doing the right thing, they focus on self protection.

Philip K. Howard, The Role of the Civil Justice System in

Allocating Societal Risk (Dec. 5, 2010), in 7 J.L. Econ. & Pol'y

375, 376 (2010).

SO ORDERED.

/s/ William G. Young

_____

WILLIAM G. YOUNG
DISTRICT JUDGE