UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE MICHAELS STORES, INC. ZIP CODE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | Civil Action No. 1:11-10920-WGY<br>(Consolidated with Civil Action No. 13-1-608-WGY) |

**DECLARATION OF JEFFREY I. CARTON IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY CLASS CERTIFICATION, PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, APPROVAL OF FORM AND MANNER OF NOTICE, AND TO SET A FINAL FAIRNESS HEARING**

I, Jeffrey I. Carton, declare the following under the penalties of perjury:

1. I am a partner in the law firm of Denlea & Carton LLP ("Denlea & Carton"), attorneys for Plaintiff Susan D'Esposito in the above-captioned consolidated action. I respectfully submit this Declaration in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement.

2. Before forming Denlea & Carton in December 2012, I had been a named partner in the law firm Meiselman Denlea Packman Carton & Eberz, P.C., the predecessor to the firm of Meiselman, Packman, Nealon, Scialabba & Baker, P.C. ("Meiselman Packman"), which represents plaintiff Melissa Tyler in the companion action, *Melissa Tyler v. Michaels Stores, Inc.*, Civil Action No. 1:11-10920-WGY, consolidated herein. While at Meiselman Packman, I was the partner in charge of the *Tyler* action, and I argued the case before the Supreme Judicial Court of Massachusetts, leading to the landmark decision, *Tyler v. Michaels Stores, Inc.*, 464

1

Mass. 492 (2013), which interprets the meaning of Mass. Gen. Laws Ch.93, Section 105 and answers the three questions this Court certified to the Supreme Judicial Court.

3. Denlea & Carton was retained by Plaintiff D'Esposito to prosecute her claims that Michaels Stores, Inc. ("Michaels") unlawfully collected her and other similarly situated Massachusetts consumers' ZIP codes when they made a credit card purchase, in contravention of M.G.L. c. 93 § 105(a).

## Background of the Litigation and Settlement Discussion

4. I respectfully refer the Court to the accompanying Declaration of Todd S. Garber, Esq., my former colleague at Meiselman Packman, for a description of the procedural history leading up to the Massachusetts Supreme Judicial Court's ruling, so as not to repeat unnecessarily that background herein.

5. Following the Supreme Judicial Court's ruling, on or about March 14, 2013, Plaintiff D'Esposito filed a Complaint, styled *D'Esposito v. Michaels Stores, Inc.*, Case No. 13-1-608-WGY, alleging similar allegations to those alleged in the *Tyler* action.

6. On March 28, 2013, this Court consolidated both actions.

7. On April 29, 2013, this Court entered the Parties' Joint Case Management Schedule, setting the case to be ready for trial in May 2014. (Dkt. No. 53.)

8. On April 29, 2013, Michaels filed its Answers to both the *Tyler* and *D'Esposito* Complaints. (Dkt. No. 54-55.)

9. On May 1, 2013, this Court entered Plaintiffs' Proposed Case Management Order appointing Meiselman, Packman, Nealon, Scialabba & Baker P.C. and Denlea & Carton LLP as Co-Lead Counsel and Whatley Kallas, LLC as Liaison Counsel. (Dkt. No. 57.)

10. Both the *Tyler* and *D'Esposito* Complaints allege that Michaels violates Mass. Gen. Laws ch. 93 § 105(a) through its collection of ZIP codes from its customers when they make purchases using credit cards at Michaels retail stores in Massachusetts. The Complaints allege that Michaels' employees ask customers for their ZIP codes in order to "reverse engineer" and identify those customers' addresses using commercially available databases. The Complaints allege that Michaels is thus able to use that personal identification information for intrusive marketing purposes, which include Michaels' own direct marketing, such as sending marketing mail directly to consumers' homes without their permission.

11. Subsequent to the consolidation of the two cases, the Parties exchanged initial disclosures, and Plaintiffs served Michaels with requests for production and interrogatories. Michaels answered Plaintiffs' Complaints by, among other things, generally and specifically denying the Complaints' allegations that Plaintiffs or the Class have been damaged in any sum whatsoever and further denying that Plaintiffs or the Class are entitled to the relief requested in the Complaints or any other relief.

12. Counsel for the Settling Parties subsequently conferred dozens of times via email and telephone, during which time they (and their clients) considered their claims and defenses, the potential for liability and the certification of a class, and the potential for a fair and reasonable class action settlement.

13. During these discussions, Plaintiffs obtained from Michaels information relating to Michaels' policies and practices with respect to its customers' ZIP codes, as well as the size and composition of the proposed Class.

14. After conducting sufficient discovery such that each side was in a position to evaluate the merits, strengths, and weaknesses of any claims or defenses, the parties agreed to

engage in arm's-length settlement negotiations. Leading up to and including the settlement negotiations, the Settling Parties each examined the uncertainties of trial and the benefits to be obtained under a settlement, and they have each considered the costs, risks, and delays associated with the continued prosecution of this time-consuming litigation and the likely appeals of any rulings in favor of either Plaintiffs or Michaels.

15.     The parties agreed to engage in face-to-face settlement negotiations in New York in which I personally participated. At the end of a long and sometimes contentious day of in-person, arm's length, good faith settlement negotiations held in New York among highly experienced counsel, in which the General Counsel and Assistant General Counsel of Michaels actively participated, the parties reached a settlement. After the Settlement was reached, the Settling Parties drafted and executed the Settlement Agreement and Release attached hereto as Exhibit 1.

## Summary of Proposed Settlement

16.     Under the Settlement, the Class is divided into two sub-classes. The first sub-class ("sub-class one") includes known consumers from whom Michaels requested and recorded personal identification information in conjunction with a credit card and/or debit card transaction in a Massachusetts retail store after May 23, 2007, and for whom Michaels maintains a mailing address that was solely obtained by a ZIP code append. Sub-class one totals approximately 15,000 Class members. The second sub-class ("sub-class two") includes known consumers from whom Michaels also requested and recorded a ZIP code in conjunction with a credit card and/or debit card purchase transaction in a Massachusetts retail store after May 23, 2007, but for whom Michaels obtained a mailing address from a source other than a ZIP code append. Sub-class two totals approximately 4,300 Class members. All Class members shall receive direct mail notice.

17. Class members in sub-class one shall automatically receive a Twenty-Five Dollar ($25.00) Cash Value Voucher which can be used on a single occasion at any Michaels retail store in Massachusetts to purchase any item or service available. The $25.00 Cash Value Voucher can be combined with other discounts and stacked, and the Cash Value Voucher is freely transferable. The total cash value of these $25.00 Cash Value Vouchers is approximately $375,000.00.

18. Class Members in sub-class two shall automatically receive a Ten Dollar ($10.00) Cash Value Voucher which can be used one time at any Michaels retail store in Massachusetts to purchase any item or service available. The $10.00 Cash Value Voucher can be combined with other discounts and stacked, and the Cash Value Voucher is freely transferable. The total cash value of these $10.00 Cash Value Vouchers is approximately $43,000.00.

19. Based on the size of the two sub-classes, the total value of the Settlement is estimated to be $418,000.00.

20. The Settlement also provides that Michaels agrees to comply with the provisions of M.G.L. c. 93 sec. 105 in its Massachusetts retails stores. In addition, Michaels has agreed to take reasonable steps to purge and/or delete all consumer addresses appended from solely a ZIP code obtained at the point-of-sale during a credit and/or debit card transaction since May 23, 2007, within ninety (90) days after the Final Judicial Approval of the Settlement.

21. The Settling Parties have agreed that Plaintiff Tyler will be entitled to apply to the Court for an incentive award of up to Five Thousand Dollars ($5,000.00) and that Plaintiff D'Esposito will be entitled to apply for an incentive award of up to Two Thousand Five Hundred Dollars ($2,500.00) in recognition of the time and effort spent by the Plaintiffs as the Class

Representatives. Michaels has agreed to pay such incentive awards if approved by the Court. These amounts will be paid separate from and in addition to the amount that Michaels has agreed to pay to Class members, and will in no way diminish the Class recovery.

22. Furthermore, subject to Court approval, the Settling Parties have reached an agreement on attorneys' fees and costs to be paid by Michaels. Pursuant to the Settling Parties' agreement, Class Counsel will be entitled to apply for attorneys' fees and costs up to Four Hundred Twenty Five Thousand Dollars ($425,000.00) to which Michaels will not object. Subject to Court approval, Michaels has agreed to pay this amount. The attorneys' fees and expense reimbursement will in no way diminish the recovery of the Class.

23. I understand that Michaels maintains a database of names and mailing addresses for all members of the Class. This will allow direct mail notice to the members of the Class.

### Denlea & Carton Has Experienced Consumer Class Action Attorneys

24. Denlea & Carton will fairly and adequately represent the interests of all class members, and thus satisfies the requirements of Federal Rule of Civil Procedure 23 with respect to the appointment of class counsel. Denlea & Carton has a proven track record of zealously and successfully advancing the interests of class members in consumer class actions.

25. Denlea & Carton's attorneys are highly qualified and have extensive experience in complex civil litigation and consumer class actions. We understand the duties imposed upon class counsel in consumer class actions, and have proven adept at all phases of litigation, from discovery and motion practice to trial and appeal or settlement.

26. The attorneys at Denlea & Carton have successfully litigated complex class actions in federal and state courts all across the country, and have obtained successful results for clients against some of the world's largest corporations, such as Shell Oil Company, Wal-Mart

and Costco. A sampling of some of the more significant past and present class action cases litigated by me and by my partner, Robert J. Berg, the two attorneys at Denlea & Carton who prosecuted this action, can be found in the Firm's Resume attached hereto as Exhibit 2.

27. Denlea & Carton is also counsel of record in numerous class actions throughout the country, including cases pending in the United States District Courts for the District of Massachusetts, the Southern District of Florida, the District of Maryland, the Eastern District of New York, the District of New Jersey, and the District of Connecticut.

28. Denlea & Carton attorneys have the requisite knowledge of the substantive and procedural law to prosecute this class action. Denlea & Carton has committed its resources to the vigorous litigation of this case, has identified appropriate claims, and has aggressively pursued discovery to establish the evidence necessary to obtain class certification and to prevail on the merits.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 15, 2014 in White Plains, New York.

By: ______________________
Jeffrey I. Carton