# EXHIBIT 1

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is entered into by and between Plaintiffs Melissa Tyler ("Plaintiff Tyler") and Susan D'Esposito ("Plaintiff D'Esposito") (collectively "Plaintiffs"), individually, and in their representative capacity on behalf of all others similarly situated on the one hand, and Defendant Michaels Stores, Inc. and its former, current, and future parents, affiliates, insurers, assigns, subsidiaries ("Michaels"), on the other hand. Plaintiffs and Michaels jointly are referred to herein as "Parties."

## RECITALS

**WHEREAS** on or about May 23, 2011, Plaintiff Tyler filed a Class Action Complaint against Michaels in the United States District Court for the District of Massachusetts Civil Action No. 11-cv-10920-WGY entitled *Melissa Tyler, on behalf of herself and all others similarly situated v. Michaels Stores, Inc.* in which she alleged that Michaels violated M.G.L. c. 93 sec 105(a);

**WHEREAS**, on or about March 14, 2013, Plaintiff D'Esposito filed a Class Action Complaint against Michaels in the United States District Court for the District of Massachusetts Civil Action No. 13-1-608-WGY entitled *Susan D'Esposito, on behalf of herself and all others similarly situated v. Michaels Stores, Inc.* in which she alleged that Michaels violated M.G.L. c. 93 sec 105(a);

**WHEREAS**, on March 28, 2013, the United States District Court for the District of Massachusetts consolidated both actions filed by Plaintiffs (the "Consolidated Action").

**WHEREAS** the Parties conducted a factual investigation and analyzed the relevant legal issues with regard to the claims in, and potential defenses to, the Consolidated Action. The Parties also exchanged initial disclosures and discovery. Plaintiffs and their counsel contend that the Consolidated Action has merit. Michaels and its counsel contend that the Consolidated Action does not have merit and that Michaels has defenses that could eliminate or reduce liability and monetary recovery in this case. The Parties also have considered the uncertainties of trial and the benefits to be obtained under the proposed settlement and have considered the costs, risks, and delays associated with the continued prosecution of this time-consuming litigation and the likely appeals of any rulings in favor of either Plaintiffs or Michaels;

**WHEREAS** the Parties engaged in arms-length negotiations, and on August 12, 2013, the Parties participated in an all-day mediation in New York at which a settlement was reached, which is embodied in this Agreement;

**WHEREAS** Michaels generally and specifically denies the allegations in the Consolidated Action that Plaintiffs or the putative class have been damaged in any sum whatsoever, and that Plaintiffs or the putative class are entitled to any relief;

**WHEREAS** the Parties recognize and agree that it is in their mutual best interests to resolve their differences as set forth herein. The Parties also recognize and agree that none admit to any wrongdoing and that the agreements and releases set forth below represent the Parties'

16114637v.6

compromise of disputed matters in order to avoid the delay and uncertainties of litigation and the further disruption and expense of the Consolidated Action;

**WHEREAS** the Parties wish to fully, finally, and completely resolve all claims, causes of action, demands, liabilities, losses and damages of any kind, known or unknown, as defined in this Agreement, including Plaintiffs' rights to be compensated for such claims and the propriety of injunctive relief.

**NOW, THEREFORE**, in exchange for the mutual covenants and promises contained herein and other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

## AGREEMENT

In consideration of the covenants and agreements set forth herein, Plaintiffs, the Settlement Class, and Michaels, themselves and through their undersigned counsel, agree to settle the Consolidated Action, subject to Court approval, under the following terms and conditions:

**1.    DEFINITIONS.** Unless otherwise indicated above, the following shall be defined terms for purposes of this Agreement. Some definitions use terms that are defined later in the section.

**1.1**    The term **"Claim"** means the claims set out in the March 11, 2011 notice of claim pursuant to M.G.L. c. 93A sec 9 and subsequent lawsuits filed in Court referencing the claim notice to Michaels as well as alleging violations of M.G.L. c. 93 sec. 105(a).

**1.2**    The term **"Agreement"** means this Settlement Agreement and Release, including all exhibits attached hereto.

**1.3**    The term **"Cash Value Voucher(s)"** refers to a transferable voucher issued by Michaels that shall be valid for a credit of either ten dollars ($10.00) or twenty-five dollars ($25.00), depending upon whether Michaels first obtained the customer's zip code by a reverse append process. The Vouchers are to be used on a single, in-store purchase in Massachusetts. The vouchers are stackable and can be used in conjunction with other coupons, discounts and promotions. The vouchers may be redeemed at Michaels retail stores in Massachusetts. No minimum or maximum purchase amount is required to use the vouchers, but they cannot be redeemed for cash, and any remaining balance not used in a single, in-store transaction shall be forfeited. No monetary refund, cash, or change of any kind shall be provided for all or any portion of the voucher's value. The vouchers are void if copied, sold, purchased, taxed and where prohibited. The vouchers are not gift cards or gift certificates under Massachusetts law. Thus, it is the Parties' belief and intent that the Cash Value Vouchers are not subject to the restrictions and terms found under Massachusetts law or any similar state or federal law. Vouchers cannot be replaced or redeemed if lost or stolen. The vouchers are not redeemable for telephone orders, Michaels.com, gift cards, or prior purchases. The vouchers cannot be redeemed as cash or merchandise credit if merchandise is returned. The vouchers shall expire ninety days (90) days after issuance. Copies of the voucher will not be accepted. The

vouchers shall be immediately available for Settlement Class Members' redemption upon receipt.

**1.4** The term **"Claims Administrator"** means"To Be Defined".

**1.5** The terms **"Class"** and **"Class Members"** mean "All persons from whom Michaels requested and recorded personal identification information in conjunction with a credit card and/or debit card transaction in a Massachusetts retail store from May 23, 2007 through the date that the Court enters the Preliminary Approval Order, and for whom Michaels maintains a mailing address that was appended from a zip code obtained at the point-of-sale."

**1.6** The term **"Class Representatives"** means Plaintiffs Melissa Tyler and Susan D'Esposito in their representative capacity on behalf of the Class.

**1.7** The term **"Consolidated Action"** means the May 23, 2011 and March 14, 2013 Complaints filed by Plaintiffs against Michaels alleging claims of violation of M.G.L. c. 93 sec. 105 by Michaels.

**1.8** The term **"Court"** means the United States District Court for the District of Massachusetts.

**1.9** The term **"Fairness Hearing"** means the hearing at or after which the Court will make a final decision whether to approve this Agreement as fair, reasonable and adequate.

**1.10** The term **"Final Judicial Approval"** means the date upon which any of the following events occurs: (1) the expiration of the time for filing an appeal if there are any objections filed by any Class Member; (2) the conclusion of any appeal taken if there are any objections filed by any Class Member; (3) the withdrawal of the last objection to the Settlement; or (4) the entry of the Final Order if there are no objections filed by any Class Member.

**1.11** The term **"Final Order"** means the order approving the Settlement and this Agreement.

**1.12** The term **"Full Class Notice"** means the Full Class Notice of the proposed Settlement terms, as approved by Plaintiffs' Counsel, Michaels Counsel, and the Court to be posted on the Settlement Website pursuant to Section 3.2 of this Agreement.

**1.13** The term **"Michaels"** means Michaels Stores, Inc. and its former, current, and future parents, affiliates, insurers, assigns and subsidiaries.

**1.14** The term **"Michaels Counsel"** means the law firm of Seyfarth Shaw LLP.

**1.15** The term **"Plaintiffs"** means plaintiff Melissa Tyler and Susan D'Esposito individually and in their representative capacities on behalf of the Class.

**1.16** The term **"Parties"** means Michaels and Plaintiffs Melissa Tyler and Susan D'Esposito, individually and in their representative capacities on behalf of the Class.

**1.17** The terms "**Plaintiffs' Counsel**" or "**Class Counsel**" means the law firms of Meiselman, Packman, Nealon, Scialabba & Baker, P.C. and Denlea & Carton LLP.

**1.18** The term "**Preliminary Approval Order**" means the order certifying the Class for settlement purposes only, approving the proposed notice, and setting the date and time of the Fairness Hearing.

**1.19** The term "**Settlement**" means the settlement of the Consolidated Action and related claims effectuated by this Agreement.

**1.20** The term "**Settlement Class**" means those persons who are members of the Class who have not properly and timely opted out of the Consolidated Action.

**1.21** The term "**Settlement Class Member**" means any person who is included in the Settlement Class.

**1.22** The term "**Summary Notice to Class Members**" means the summary of the Full Class Notice of the terms of the proposed Settlement, as approved by Plaintiffs' Counsel, Michaels Counsel, and the Court, to be provided pursuant to Section 3.2 of this Agreement.

**2.    SETTLEMENT TERMS.**

**2.1    Certification of the Settlement Class.** For the purposes of the Settlement only and the proceeding contemplated herein, the Parties stipulate and agree that: (1) the Class shall be certified in accordance with the definition contained in Section 1.5 above; (2) Plaintiffs shall represent the Class for settlement purposes and shall be the Class representatives; and (3) Plaintiffs' Counsel shall be appointed as Class Counsel.

**(a)    Decertification of the Settlement Class if Settlement Not Approved.** Michaels does not consent to certification of the Class for any purpose other than to effectuate settlement of the Consolidated Action. If the Court does not enter Final Approval of the Settlement reflected in this Agreement, or if for any other reason final approval of the Settlement does not occur, is successfully objected to, or challenged on appeal, any certification of any Class will be vacated and the Parties will be returned to their positions with respect to the Consolidated Action as if the Agreement had not been entered into. In the event that Final Approval of the Settlement is not achieved: (a) any Court orders preliminarily or finally approving the certification of any class contemplated by this Agreement shall be null, void, and vacated, and shall not be used or cited thereafter by any person or entity; and (b) the fact of the settlement reflected in this Agreement, that Michaels did not oppose the certification of a Class under this Agreement, or that the Court preliminarily approved the certification of a Class, shall not be used or cited thereafter by any person or entity, including in any manner whatsoever, including without limitation any contested proceeding relating to the certification of any class.

**2.2    Award to the Settlement Class.** The Class shall be divided into two sub-classes. The first sub-class ("sub-class one") shall include Class Members from whom Michaels requested and recorded personal identification information in conjunction with a credit card and/or debit card transaction in a Massachusetts retail store after May 23, 2007 (approximately

4

fifteen thousand individuals), and for whom Michaels maintains a mailing address that was solely obtained by a zip code append. The second sub-class ("sub-class two") shall include Class Members from whom Michaels requested and recorded a ZIP code in conjunction with a credit card and/or debit card purchase transaction in a Massachusetts retail store after May 23, 2007, and for whom Michaels obtained a mailing address from a source other than a zip code append (approximately four thousand three hundred individuals). All Class Members shall receive Class Notice pursuant to Section 3.2 below. Class Members in sub-class one shall automatically receive a Twenty-Five Dollar and No Cents ($25.00) Cash Value Voucher to be used at any Michaels retail store in Massachusetts. Class Members in sub-class two shall automatically receive a Ten Dollar and No Cents ($10.00) Cash Value Voucher to be used at any Michaels retail store in Massachusetts. Michaels will distribute the Class Notice and Cash Value Vouchers via U.S. Mail, as described in Section 3.2 of this Agreement.

**2.3    Compliance with all laws.** Michaels agrees to comply with the provisions of M.G.L. c. 93 sec. 105 in its Massachusetts retail stores.

**2.4    Deletion of Consumer Data.** Michaels agrees to purge and/or delete all consumer addresses appended from solely a zip code obtained at the point-of-sale during a credit and/or debit card transaction since May 23, 2007, within ninety (90) days after the Final Judicial Approval of the Settlement. Michaels, however, retains the right to re-acquire any consumer address(es) by lawful means after the Cash Value Vouchers are distributed to Class Members.

**2.5    Incentive Award to Class Representatives.** The Parties agree that Plaintiff Tyler shall be entitled to apply to the Court for an incentive award of up to Five Thousand Dollars and No Cents ($5,000.00) and that Plaintiff D'Esposito shall be entitled to apply for an incentive award of up to Two Thousand Five Hundred Dollars and No Cents ("$2,500.00) to which Defendant will not object, in recognition of the amount of time and effort spent by Plaintiffs as the Class Representatives. These amounts were determined to be appropriate only after an agreement had been reached on all Class settlement terms. Accordingly, in the event this Agreement receives Final Judicial Approval, and the incentive award is approved by the Court, Michaels shall pay within twenty (20) calendar days thereafter the incentive awards of up to Five Thousand Dollars and No Cents ($5,000.00) to Plaintiff Tyler and up to Two Thousand Five Hundred Dollars and No Cents ($2,500.00) to Plaintiff D'Esposito.

**2.6    Attorneys' Fees and Costs.** Subject to Court approval, the Parties reached an agreement on attorneys' fees and costs to be paid by Michaels. Pursuant to the Parties' agreement, Plaintiffs' Counsel shall have the right to petition the Court for attorneys' fees and costs of up to Four Hundred and Twenty Five Thousand Dollars and No Cents ($425,000.00) to which Michaels will not object. Accordingly, in the event this Agreement receives Final Judicial Approval, and the attorneys' fees and costs are approved by the Court, Michaels shall pay within twenty (20) calendar days thereafter the attorneys' fees and costs.

**2.7    Settlement Implementation Costs.** Michaels shall bear all costs of providing Class Notice in the manner set forth in Section 3.2 below of this Agreement and all costs associated with administration of the Settlement. Michaels has the right to select the

Claims Administrator subject to Plaintiffs' counsel's input, and further has the right to question and/or contest costs it does not believe to be reasonable and/or appropriate.

**2.8 Extension of Deadlines.** In recognition of the peak retail holiday season, the Parties agree that the deadlines contained in this Agreement may be extended, at the Company's sole discretion, to or after January 10, 2014 in order to ensure that Michaels does not have to complete tasks related to the Settlement during the period from November 15, 2013 to January 10, 2014. If notice is delayed, the corresponding time periods for class members to respond shall likewise be extended.

### 3. CLASS SETTLEMENT PROCEDURES.

**3.1 Settlement Approval.** As soon as practicable after the execution of this agreement by the Parties, Plaintiffs shall file a Notice of Settlement and an application for a Preliminary Approval Order requesting the Court to approve this Agreement as fair, reasonable and adequate, approving the content and method of Class Notice, and setting the date and time of the Fairness Hearing.

**3.2 Class Notice and Distribution of Cash Value Vouchers.** Subject to Court approval, the Parties agree that after entry of the Preliminary Approval Order, the Claims Administrator and Michaels will provide the Class with Notice of the proposed Settlement and the Certificate by the following methods:

(a) The Claims Administrator will distribute the Summary Notice to Class Members via U.S. mail beginning no more than forty-five (45) calendar days after the entry of the Preliminary Approval Order. The Claims Administrator will distribute the Cash Value Vouchers to Class Members within twenty (20) calendar days after Final Judicial Approval.

(b) Internet posting by the Claims Administrator, on its website, of the Full Class Notice for sixty (60) days beginning no more than forty-five (45) calendar days after entry of the Preliminary Approval Order.

**3.3 The Claims Administrator.** The Claims Administrator will be responsible for all aspects of claims administration in accordance with the terms of its engagement, including without limitation: (a) creating and maintaining a confidential and secure database of names and addresses of Class Members in accordance with information provided by Michaels for the sole purpose of claims administration (which shall be deleted and certified as such within 30 days after Final Approval).; (b) printing and mailing the Summary Notice and Cash Value Vouchers; (c) using reasonable efforts to identify new addresses for Class Members whose Summary Notices or Cash Value Vouchers are returned and re-sending Summary Notices or Cash Value Vouchers to those new addresses (which shall not be re-sent by the Claims Administrator to any Class Member more than once); (d) developing and maintaining a website for the purposes of notice; (e) compiling a list of Class Members who properly opt-out of or object to the Settlement. Michaels will pay all costs relating to the Claims Administrator.

**3.4** **Proof of Notice.** No later than fifteen (15) court days before the Fairness Hearing, the Claims Administrator will file with the Court and serve upon Plaintiffs' Counsel a declaration confirming that the Class Notice has been provided in accordance with Section 3.2 of this Agreement.

**3.5** **Proof of Distribution of Vouchers.** No later than fifteen (15) court days after the Claims Administrator has distributed the Cash Value Vouchers to Class Members, the Claims Administrator will file with the Court and serve upon Plaintiffs' Counsel a declaration confirming that the Cash Value Vouchers have been provided in accordance with Section 3.2 of this Agreement.

**3.6** **Objections.** Any Class Member who wishes to object to the Settlement must mail a written objection to the Claims Administrator and serve copies on Class Counsel and Michaels Counsel within forty-five (45) days after the Summary Notice is distributed. The objection must set forth, in clear and concise terms, the legal and factual arguments supporting the objection. Unless otherwise requested by the Court, Class Members shall not be entitled to speak at the Fairness Hearing unless they have submitted a timely written objection pursuant to this paragraph and indicated their intent to appear at the Fairness Hearing. Use of the Cash Value Voucher by the Class Member, or a Class Member's transferee, will be deemed to have waived the Class Member's objection to the Settlement.

**3.7** **Exclusion from the Class.** The Class Notice shall inform Class Members of their right to elect not to be part of the Class and not to be bound by this Agreement, provided that the affected person mails a request for exclusion from the Class to the Claims Administrator within forty-five (45) days after the Summary Notice is distributed, with a copy to Class Counsel and Michaels counsel. No later than fourteen (14) court days prior to the Fairness Hearing, the Claims Administrator shall prepare a list of the persons who, pursuant to the class notice, have excluded themselves from the Class in a valid and timely manner and shall deliver that list to Class Counsel and Michaels Counsel. Use of the Certificate by the Class Member, or a Class Member's transferee, will be deemed to have waived the Class Member's exclusion from the Settlement.

**4.** **FINAL JUDGMENT AND RELEASES.**

**4.1** **Approval of this Agreement.** In advance of the Fairness Hearing, counsel for the Parties will jointly take all necessary and appropriate steps to secure the Court's approval of this Agreement, with Class Counsel to prepare and submit all briefs to the Court.

**4.2** **Order and Judgment.** At or before the Fairness Hearing, Class Counsel shall move for an Order granting final approval of this Agreement and a Judgment in favor of Plaintiffs and the Class. The Judgment shall provide for Plaintiffs and the Class to take according to this Agreement and nothing else and shall include provisions that the Consolidated Action is concluded pursuant to the entry of the Judgment. Notwithstanding the conclusion of the Consolidated Action, the Parties stipulate that the Judgment will include a provision for the Court to retain jurisdiction to enforce this Agreement.

7

**4.3     Effect of Agreement if Settlement Is Not Approved.** This Agreement was entered into only for the purpose of settlement. In the event that the Court does not approve the Settlement, or the Final Order is not entered for any reason, then this Agreement shall be deemed null and void *ab initio*. In such event, it shall not be admissible or usable for any purpose in the Consolidated Action or elsewhere.

**4.4     Release of Michaels by All Class Members.** Effective upon the date of Final Judicial Approval, Plaintiffs and all Class Members shall forever, irrevocably, and unconditionally waive, release, and discharge Michaels, its predecessors, successors, all former, current, and future related parents, companies, divisions, assigns, subsidiaries, affiliates, and parents, and, collectively, their respective former, current, and future directors, officers, employees, agents, representatives, attorneys, shareholders, fiduciaries, insurers, assigns, heirs, executors, administrators, beneficiaries, insurers and trustees ("Released Parties"), from any and all claims, rights, demands, liabilities, and causes of action of every nature and description, whether known or unknown, whether they were or could have been made in the Consolidated Action, and whether for equitable relief, statutory penalties, compensatory or punitive damages, which Plaintiffs or each Class Member ever had or could have asserted against the Released Parties arising out of or relating to any and all alleged requests for and recording of personal identification information at a Massachusetts retail store, or other use thereof by Michaels, including but not limited to violation of M.G.L. c. 93 sec. 105(a) and M.G.L. c. 93A sec 9, and other statutory, constitutional, contractual or common law claims for actual damages, penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, equitable relief based on the following categories of allegations and claims reasonably related, in any way, directly or indirectly to alleged violation of M.G.L. c. 93 sec. 105(a) and M.G.L. c. 93A sec 9, including but not limited to, claims for invasion of privacy, unjust enrichment, unfair business practices and any additional constitutional, common law and/or statutory claims.

**4.5     General Release of Michaels by Named Plaintiffs.** In addition to the releases made by the Class Members set forth in Section 4.4 of this Agreement above, effective upon the date of Final Judicial Approval, the Named Plaintiffs shall make the additional following general release of all claims, known or unknown. Named Plaintiffs release and forever discharge the Released Parties, as defined above, from all claims, demands, rights, liabilities and causes of action of every nature and description whatsoever, known or unknown, including without limitation, from any and all claims, rights, demands, actions, obligations, damages, liabilities, and causes of action of any and every kind, nature and character whatsoever, whether based in tort, contract, statute, rule, or regulation, or on any other theory of recovery, whether known or unknown, and whether for equitable relief, statutory penalties, compensatory or punitive damages, arising out of, relating to, or in connection with any act or omission by or on the part of any of the Released Parties committed or omitted prior to the execution hereof. (The release set forth in this Section 4.5 shall be referred to hereinafter as the "General Release. ") The General Release includes any unknown claims the Named Plaintiffs does not know or suspect to exist in their favor at the time of the General Release, which, if known by them, might have affected their settlement with, and release of, the Released Parties by the Named Plaintiffs or might have affected their decisions not to object to this Settlement or the General Release. With respect to the General Release, the Named Plaintiffs stipulate and agree that, effective upon the date of Final Judicial Approval, the Named Plaintiffs shall be deemed to have, and by operation of the Final Order shall have, expressly waived and relinquished, to the fullest extent

permitted by law, the provisions, rights and benefits of Massachusetts law, or any other similar provision under federal or state law, which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

The Named Plaintiffs may hereafter discover facts in addition to or different from those they now know or believe to be true with respect to the subject matter of the General Release, but the Named Plaintiffs, effective upon the date of Final Judicial Approval, shall be deemed to have, and by operation of the Final Order shall have, fully, finally, and forever settled and released any and all of the claims released pursuant to the General Release whether known or unknown, suspected or unsuspected, contingent or non-contingent, which now exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct that is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.

**4.6  Michaels Release of Named Plaintiffs, the Settlement Class, and Plaintiffs' Counsel.** Effective upon the date of Final Judicial Approval, Michaels releases and forever discharges, the Named Plaintiffs, the Settlement Class, and Class Counsel from the claims related to the institution or prosecution or settlement of the Consolidated Action. This Release does not include Class Members who opt out of the Settlement.

**5.  ADDITIONAL PROVISIONS.**

**5.1  No Admission of Liability or Wrongdoing.** This Agreement reflects the compromise and settlement of disputed claims between the Parties. Its constituent provisions, and any and all drafts, communications and discussions relating thereto, shall not be construed as or deemed to be evidence of an admission or concession of any point of fact or law (including, but not limited to, matters respecting class certification) by any person or entity, and shall not be offered or received in evidence or requested in discovery in the Consolidated Action or any other action or proceeding as evidence of an admission or concession. Michaels denied and continues to deny each of the claims and contentions alleged by Plaintiffs in the Consolidated Action. Michaels has repeatedly asserted and continues to assert defenses thereto, and has expressly denied and continues to deny any wrongdoing or legal liability arising out of any of the facts or conduct alleged in the Consolidated Action.

(a) Michaels further denies that it has engaged in any unlawful activity, denies that it has failed to comply with federal or Massachusetts law in any respect, denies that debit cards are covered by M.G.L. c. 93 sec. 105, denies that it has any liability to anyone under the claims asserted in the Consolidated Action, and further states that a class should be certified only for the Settlement in the Consolidated Action.. This Agreement is entered into solely for the purpose of compromising highly-disputed claims. Nothing in this Agreement is intended or will be construed as an admission of liability or wrongdoing by Michaels, or an admission by Plaintiffs that any of their claims were non-meritorious or any defense asserted by Michaels was meritorious. This Settlement and the fact that Plaintiffs and Michaels were willing to settle the Consolidated Action will have no bearing on, and will not be admissible in connection with, any other litigation in any forum in the United States (other than solely in connection with the Settlement).

(b) The Parties have agreed to the certification of the Class for the sole purpose of effectuating this Settlement. Should the Settlement be voided by Michaels pursuant to this Agreement, or not approved by the Court, or should the Judgment not become Final, the Settlement shall not constitute an admission of any kind, and the fact that the Parties were willing to stipulate to class certification as part of the Settlement will have no bearing on, and will not be admissible in connection with, the issue of whether a class should be certified in a non-settlement context in this Consolidated Action or any other action, and in any of those events Michaels expressly reserves the right to oppose class certification.

(c) Whether or not the Judgment becomes Final, neither the Settlement, this Agreement, any document, statement, proceeding or conduct related to the Settlement or the Agreement, nor any reports or accounting of those matters, will be (i) construed as, offered or admitted in evidence as, received as, or deemed to be evidence for any purpose adverse to Defendant, including, but not limited to, evidence of a presumption, concession, indication or admission by Michaels of any liability, fault, wrongdoing, omission, concession or damage; or (ii) disclosed, referred to or offered in evidence against Michaels, in any further proceeding in the Consolidated Action, or any other civil, criminal or administrative action or proceeding except for purposes of effectuating the Settlement pursuant to this Agreement.

**5.2   Fair, Adequate and Reasonable Settlement.** The Parties believe this Settlement is fair, adequate, and reasonable, and arrived at this Settlement in arms-length negotiations, taking into account all relevant factors, present and potential.

**5.3   Right of Defendant to Void Settlement.** Michaels will have the right, but not the obligation, to void the Settlement if the Court does not grant final approval of the Settlement or grants final approval conditioned on any material change to the terms of the Settlement with respect to the payments to be made to Class Members, or the scope of the release of claims. If that occurs, Michaels will have no further obligations under the Settlement, including any obligation to pay any amounts that otherwise would have been owed under the Settlement. An award by the Court of a lesser amount than that sought by Plaintiffs and/or Class Counsel for the Class Representative Incentive Payments and/or the Class Counsel Fees and Expenses will not constitute a material change to the Settlement.

(a) Furthermore, if more than 10% of the Class Members submit a signed election not to participate in Settlement, Michaels at its sole option may withdraw from the settlement. To exercise this option, written notice must be provided within fifteen (15) calendar days of the opt out exclusion period end date .

**5.4** **Real Parties in Interest.** In executing this Agreement, the Parties warrant and represent that they, including Plaintiffs Melissa Tyler and Susan D'Esposito and their representative capacities on behalf of the Class, are the only persons having any interest in any of the claims that are described or referred to herein, or in any of the pleadings, records, and papers in the Consolidated Action, and, except as provided herein, neither said claims nor any part thereof have been assigned, granted or transferred in any way to any other person, firm or entity.

**5.5** **Voluntary Agreement.** This Agreement is executed voluntarily and without duress or undue influence on the part of or on behalf of the Parties, or of any other person, firm or entity.

**5.6** **Binding on Successors.** This Agreement shall bind and inure to the benefit of the respective successors, assigns, legatees, heirs, and personal representatives of each of the Parties.

**5.7** **Parties Represented by Counsel.** The Parties acknowledge that they have been represented in negotiations for and in the preparation of this Agreement by independent counsel of their own choosing, that they have read this Agreement and have had it fully explained to them by such counsel, and that they are fully aware of the contents of this Agreement and of its legal effect.

**5.8** **Authorization.** Each of the Parties warrants and represents that there are no liens or claims of lien or assignments in law or equity or otherwise of or against any of the claims or causes of action released herein and, further, that each party is fully entitled and duly authorized to give this complete and final general release and discharge.

**5.9** **Construction and Interpretation.** Neither the Parties nor any of the Parties' respective attorneys shall be deemed the drafter of this Agreement for purposes of interpreting any provision hereof in any judicial or other proceeding that may arise between or among them.

**5.10** **Headings.** The various headings used in this Agreement are solely for the convenience of the Parties and shall not be used to interpret this Agreement.

**5.11** **Exhibits.** Any exhibit to this Agreement is an integral part of the Agreement and Settlement and is incorporated and made a part of this Agreement.

**5.12** **Modifications and Amendments.** No amendment, change or modification of this Agreement or any part thereof shall be valid unless in writing and signed by the Parties.

5.13    **Governing Law.** This Agreement is entered into in accordance with the laws of the Commonwealth of Massachusetts and shall be governed by and interpreted in accordance with the laws of the Commonwealth of Massachusetts, without regard to its conflict of law principles.

5.14    **Further Assurances.** The Parties shall execute and deliver any and all additional papers, documents and other assurances and shall do any and all acts or things reasonably necessary in connection with the performance of its, her, or his, as the case may be, obligations hereunder to carry out the express intent of the Parties.

5.15    **Execution Date.** This Agreement shall be deemed executed upon the last date of execution by all of the undersigned.

5.16    **Continuing Jurisdiction.** The Court shall retain jurisdiction over the interpretation, effectuation, and implementation of this Agreement.

5.17    **Counterparts.** This Agreement may be executed in two or more counterparts, which together shall constitute one and the same instrument.

5.18    **Severability.** Should any paragraph, sentence, clause or provision of this Agreement be held invalid or unenforceable, such provision shall be ineffective to the extent of such invalidity or unenforceability, without invalidating the remainder of such provision or the remaining portions of this Agreement.

**PLEASE READ THIS DOCUMENT CAREFULLY. THIS AGREEMENT INCLUDES A SPECIFIC RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS.**

AGREED AND ACCEPTED:

By: _____
D. Greg Blankinship
Attorney for Melissa Tyler and Class
Meiselman, Packman, Nealon, Scialabba
& Baker, P.C.
1311 Mamaroneck Avenue
White Plains, NY 10605

AGREED AND ACCEPTED:

By: _____
Robert J. Berg
Attorney for Susan D'Esposito and Class
Denlea & Carton LLP
One North Broadway, Suite 509
White Plains, NY 10601

AGREED AND ACCEPTED:

MELISSA TYLER

_____

AGREED AND ACCEPTED:

SUSAN D'ESPOSITO

_____

AGREED AND ACCEPTED:

By:_____
Michael J. Burns
Attorney for Michaels Stores, Inc.
SEYFARTH SHAW LLP
560 Mission Street, Suite 3100
San Francisco, CA 94105

AGREED AND ACCEPTED:

MICHAELS STORES, INC.

By:_____

_____

Its:_____

13

AGREED AND ACCEPTED:	AGREED AND ACCEPTED:

MELISSA TYLER	SUSAN D'ESPOSITO

_____	_____

AGREED AND ACCEPTED:

By:_____
Michael J. Burns
Attorney for Michaels Stores, Inc.
SEYFARTH SHAW LLP
560 Mission Street, Suite 3100
San Francisco, CA 94105

AGREED AND ACCEPTED:

MICHAELS STORES, INC.

By:_____

_____

Its: _____

AGREED AND ACCEPTED:

MELISSA TYLER

_____

AGREED AND ACCEPTED:

SUSAN D'ESPOSITO

_____

AGREED AND ACCEPTED:

By: _____
Michael J. Burns
Attorney for Michaels Stores, Inc.
SEYFARTH SHAW LLP
560 Mission Street, Suite 3100
San Francisco, CA 94105

AGREED AND ACCEPTED:

MICHAELS STORES, INC.

By: _____
    Michael J. Veitenheimer
Its: SVP & General Counsel