# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

IN RE MICHAELS STORES, INC. ZIP
CODE LITIGATION

THIS DOCUMENT RELATES TO ALL
ACTIONS

Civil Action No.  1:11-10920-WGY
(Consolidated with Civil Action No.
13-1-608-WGY)

**MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION
FOR PRELIMINARY CLASS CERTIFICATION, PRELIMINARY
APPROVAL OF PROPOSED SETTLEMENT, APPROVAL OF FORM
AND MANNER OF NOTICE, AND TO SET A FINAL FAIRNESS HEARING**

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................1

STATEMENT OF FACTS ......................................................................................3

    Background of Litigation ...................................................................................3

    Summary of Proposed Settlement......................................................................7

ARGUMENT ..........................................................................................................9

I.      THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE
       SETTLEMENT BECAUSE IT IS WITHIN THE RANGE OF VALUES
       WARRANTING APPROVAL ....................................................................9

II.    THE COURT SHOULD PRELIMINARILY CERTIFY THE CLASS .....................14

      A.    The Prerequisites Of Rule 23(a) Are Satisfied. ...................................15

           1.   The Settlement Class Is Sufficiently Numerous ...........................15

           2.   There are Common Questions of Law and Fact ...........................15

           3.   The Class Representatives' Claims Are Typical Of Those Of
               The Settlement Class...................................................................16

           4.   Plaintiffs And Co-Lead Counsel Will Fairly And Adequately Protect
               The Interest Of The Class ...........................................................18

      B.    The Class' Claims Satisfy The Prerequisites Of Rule 23(b)(3).........................18

           1.   Common Legal And Factual Questions Predominate...................19

           2.   A Class Action Is Superior To Other Methods Of Adjudication.................19

III.   THE FORM AND CONTENT OF THE PROPOSED NOTICE TO
       THE CLASS ARE SUFFICIENT................................................................20

IV.   PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS
       CLASS COUNSEL..................................................................................22

CONCLUSION......................................................................................................24

# TABLE OF AUTHORITIES

**Cases**              **Page**

Abelson v. Strong,
MDL No. 584, No. 85-0592, 1987 WL 15872 (D. Mass. July 30, 1987)................................. 17

Amchem Prods., Inc. v. Windsor,
521 U.S. 591(1997).................................................................................................... 15

City P'ship Co. v. Atlantic Acquisition L.P.,
100 F.3d 1041 (1st Cir. 1996);................................................................................... 13

D'Esposito v. Michaels Stores, Inc.,
Case No. 13-1-608-WGY ........................................................................................... 5

Durrett v. Providence Hous. Auth.,
896 F.2d 600 (1st Cir. 1990).................................................................................. 9, 20

Duhaime v. John Hancock Mut. Life Ins. Co.,
177 F.R.D. 54 (D. Mass. 1997)................................................................................. 15

Fidel v. Farley,
534 F.3d 508 (6th Cir. 2008) .................................................................................... 22

Guckenberger v. Boston Univ.,
957 F. Supp. 306 (D. Mass. 1997) ............................................................................ 15

Hawkins v. Comm'r of New Hampshire Dep't of Health & Human Servs.,
No. 99-143, 2004 WL 166722 (D.N.H. Jan. 23, 2004) ............................................. 14

Hochstadt v. Boston Scientific Corp.,
708 F. Supp. 2d 95 (D. Mass. 2010) ........................................................... 10, 11, 12

Hotel Holiday Inn de Isla Verde v. N.L.R.B.,
723 F.2d 169 (1st Cir. 1983)...................................................................................... 9

In re Agent Orange Prod. Liab. Litig.,
611 F. Supp. 1396 (E.D.N.Y. 1985) ......................................................................... 13

In re Community Bank of Northern Va.,
418 F.3d 277 (3d Cir. 2005)...................................................................................... 15

In re EVCI Career Colleges Holding Corp. Sec. Litig.,
No. 05-10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007).................................... 12

**Cases**                                                                                                    **Page**

In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.,
   55 F.3d 768 (3rd Cir. 1995) ................................................................................. 10

In re Gilat Satellite Networks, Ltd.,
   No. 02-1510, 2007 WL 1191048 (E.D.N.Y. Apr. 19, 2007), .................................... 11

In re Livent, Inc. Noteholders Sec. Litig.,
   210 F.R.D. 512 (S.D.N.Y 2002) ............................................................................ 19

In re Lupron Mktg. & Sales Practices Litig.,
   228 F.R.D. 75 (D. Mass. 2005).............................................................................. 9, 10

In Re Med. X-ray Film Antitrust Litig.,
   No. 93-5904, 1997 WL 33320580 (E.D.N.Y. Dec. 26, 1997)................................. 11

In re Pharm. Indus. Average Wholesale Price Litig.,
   588 F.3d 24 (1st Cir. 2009)................................................................................... 11, 12

In re Relafen Antitrust Litig.,
   231 F.R.D. 527 (D. Mass. 2005)............................................................................ 10

In re Sumitomo Copper Litig.,
   189 F.R.D. 274 (S.D.N.Y. 1999) .......................................................................... 12

In re Traffic Executive Ass'n,
   627 F.2d 631 (2d Cir. 1980)................................................................................... 11

In re Transkaryotic Therapies, Inc. Sec. Litig.,
   No. 03-10165, 2005 WL 3178162 (D. Mass. Nov. 28, 2005) ................................. 16, 18, 19,20

In re Warner Chilcott Ltd. Sec. Litig.,
   No. 06-cv-11515, 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008)............................. 22

Lazar v. Pierce,
   757 F.2d 435 (1st Cir. 1985)................................................................................... 9, 10

Mack v. Suffolk County,
   191 F.R.D. 16 (D. Mass. 2000).............................................................................. 14, 15

McAdams v. Mass. Mut. Life Ins. Co.,
   2002 WL 1067449 (D. Mass. May 15, 2002) ......................................................... 15

# TABLE OF AUTHORITIES
(Cont'd)

**Cases**                                                                                                    **Page**

McLaughlin v. Liberty Mut. Ins. Co.,
   224 F.R.D. 304 (D. Mass. 2004) ................................................................................... 15

Payne v. Goodyear Tire & Rubber Co.,
   216 F.R.D. 21 (D. Mass. 2003) ...................................................................... 15, 16, 17

Priest v. Zayre Corp.,
   118 F.R.D. 552 (D. Mass. 1988) ................................................................................... 17

Rolland v. Celluci,
   191 F.R.D. 3 (D. Mass. 2000) ....................................................................................... 13

Scott v. First Am. Title Ins. Co.,
   No. 06-286, 2008 WL 4820498 (D.N.H. Nov. 5, 2008) ............................................. 11

Smilow v. Southwestern Bell Mobile Svs.,
   323 F.3d 32 (1st Cir. 2003) ........................................................................................... 14

Swack v. Credit Suisse First Boston,
   230 F.R.D. 250 (D. Mass. 2005); ................................................................................. 17

Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.,
   No. 01-11814, 2004 WL 1087261 (S.D.N.Y. May 14, 2004) ..................................... 13

Tyler v. Michaels Stores, Inc., 464 Mass. 492, 493, 984 N.E.2d 737, 739 (2013) ......................... 5

Tyler v. Michaels Stores, Inc., 840 F. Supp. 2d 438, 452 (D. Mass. 2012) .................................... 4

Tyler v. Michaels Stores, Inc., Case No. 1:11-cv-10920-WGY ...................................................... 3

United States v. Comunidades Unidas Contra La Contaminacion,
   204 F.3d 275 (1st Cir. 2000) ........................................................................................... 9

Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,
   396 F.3d 96 (2d Cir. 2005) ....................................................................................... 9, 12

Walsh v. Great Atl. and Pac. Tea Co.,
   96 F.R.D. 632 (D.N.J. 1983) ........................................................................................ 12

# TABLE OF AUTHORITIES
(Cont'd)

## Other Authorities

Federal Judicial Center, Manual for Complex Litigation, § 21.632 (4th ed. 2004)........................ 2

M.G.L. c. 93A § 9(3) ............................................................................................. 3, 8

Newberg On Class Actions, 2 Newberg & Conte § 11.41........................................................... 10

## Rules

Fed. R. Civ. P. 23 ................................................................................................. *passim*

Mass. Gen. Laws ch. 93 § 105 and ch. 93A § 9........................................................................ 1,18

## INTRODUCTION

Plaintiffs, Melissa Tyler and Susan D'Esposito, on behalf of the proposed Class and through their attorneys, Meiselman, Packman, Nealon, Scialabba & Baker P.C. and Denlea & Carton LLP, submit this application for preliminary approval of a proposed settlement (the "Settlement") of this action (the "Action"). Plaintiffs allege that Michaels Stores, Inc. ("Michaels") asks certain consumers using credit cards to provide a ZIP code, which consumers do in the mistaken belief that they must in order to complete the transaction. In fact, Michaels is not required to collect its customers' ZIP codes; to the contrary, Defendant uses a customer's ZIP code and name to identify that customer's address using commercially available databases. Michaels is thus able to use that personal identification information to send unwanted marketing material.

Plaintiffs allege that the collection of ZIP codes from consumers using credit cards violates Mass. Gen. Laws ch. 93 § 105(a). They bring this Action on behalf of a class of Massachusetts consumers whose personal identification information was wrongfully collected by Michaels from May 23, 2007 to the present.

Michaels denies any wrongdoing in this case, denies Plaintiffs' allegations, and further denies Plaintiffs' assertion that the retailer's requesting and recording of a consumer's personal information is a violation of Massachusetts' law.

The Action seeks to redress Michaels' allegedly unlawful invasion of its customers' privacy and its violation of the laws of the Commonwealth of Massachusetts designed to protect consumers' rights to be free from intrusive corporate data collection and marketing. The Settlement substantially achieves this goal.

The terms of the Settlement are set forth in the Settlement Agreement and Release attached as Exhibit 1 to the Declaration of Jeffrey I. Carton filed herewith. Under the Settlement, Michaels will cause immediately-usable Cash Value Vouchers to be mailed to all Class members, none of whom have to make a claim. The Cash Value Vouchers, which are transferrable and which do not expire for ninety (90) days, are valued at ten dollars ($10.00) or twenty-five dollars ($25.00), with a total value of approximately $418,000.00. In return, Class members release any claims arising from Defendant's improper use of their ZIP codes.

Plaintiffs respectfully submit that preliminary approval of the Settlement is appropriate. On August 12, 2013, the Parties participated in a full day settlement negotiation in New York, at which a settlement was reached. The settlement represents the product of good-faith, arm's-length negotiations among experienced counsel for Plaintiffs and the Defendant ("the Settling Parties"). In entering into the Settlement, the Settling Parties are fully conversant with the strengths and weaknesses of this Action. Being thus well-positioned to evaluate the risks of continued litigation versus the fairness and prudence of a resolution at this time, each of the Settling Parties believes that the Settlement achieves a fair and reasonable result.

Preliminary approval of the Settlement will allow the parties to notify Class members of the Settlement and of their right to object or opt out. Preliminary approval does not require the Court to rule on the ultimate fairness of the Settlement, but to make only a "preliminary determination" of the "fairness, reasonableness, and adequacy" of the proposed settlement. See Federal Judicial Center, Manual for Complex Litigation, § 21.632 (4th ed. 2004). As set forth herein, the Court should permit notice of the Settlement to be sent to Class members, as the Settlement is fair and reasonable.

Accordingly, Plaintiffs respectfully request that the Court enter an order, in the form of the accompanying proposed Order of Preliminary Approval: (1) preliminarily certifying the Class for purposes of Settlement only; (2) granting preliminary approval of the proposed Settlement; (3) approving the Settling Parties' proposed forms and method of giving notice to the Class of the pendency of this litigation and of the Settlement; (4) directing that notice be given to the putative Class members as approved by the Court; (5) finding that such notice constitutes the best notice practicable under the circumstances; (6) naming Plaintiffs as Representative Plaintiffs and their counsel, Meiselman, Packman, Nealon, Scialabba & Baker P.C. and Denlea & Carton LLP, as Class Counsel; (7) scheduling various dates for requirements and/or obligations of the Settling Parties and Class members as more fully described in the proposed Order filed concurrently herewith; and (8) scheduling a fairness hearing during which the Court will consider (a) the Settling Parties' request for final approval of the Settlement and entry of the proposed Final Order and Judgment, (b) Class Counsel's application for an award of attorneys' fees and reimbursement of expenses, (c) Plaintiffs' request for incentive awards; and (d) dismissal of the Action pending before this Court. Defendant consents to this motion.

**STATEMENT OF FACTS**

**Background of Litigation**

On or about March 11, 2011, pursuant to M.G.L. c. 93A § 9(3), Plaintiff Tyler sent notice to Michaels of her intent to file a class action complaint in the United States District Court for the District of Massachusetts in which she intended to state claims against Michaels for violations of M.G.L, c. 93 sec 105(a) on behalf of herself and all others similarly situated.  On May 23, 2011, Plaintiff Tyler filed a Complaint in the United States District Court for the District of Massachusetts, styled <u>Tyler v. Michaels Stores, Inc.</u>, Case No. 1:11-cv-10920-WGY,

which asserts claims for Unjust Enrichment and violations of the Massachusetts Unfair Trade Practices Act, Mass. Gen. Laws, ch. 93A. On July 22, 2011, Michaels filed a motion to dismiss the Complaint and the parties thereafter engaged in extensive briefing relating to this motion. On October 20, 2011, this Court held oral argument on Michaels' motion to dismiss.

On January 6, 2012, this Court granted Michaels' motion to dismiss. Tyler v. Michaels Stores, Inc., 840 F. Supp. 2d 438, 452 (D. Mass. 2012). The Court, however, noting that "this is a case of first impression," invited either party to request that the "question of Massachusetts state law" be certified to the "Supreme Judicial Court." Id. at 452 n.10. Thereafter, on January 13, 2012, Tyler moved for an order certifying certain legal questions of Massachusetts Commonwealth law to the Supreme Judicial Court. (Dkt. No. 22.) Michaels opposed Plaintiff's request. (Dkt. No. 23.)

On February 6, 2012, this Court granted certification to the Massachusetts Supreme Judicial Court, certifying the following questions to the Supreme Judicial Court:

1.      Under Massachusetts General Laws, chapter 93, section 105(a), may a ZIP code number be "personal identification information" because a ZIP code number could be necessary to the credit card issuer to identify the card holder in order to complete the transaction?

2.      Under Massachusetts General Laws, chapter 93, section 105(a), may a plaintiff bring an action for this privacy right violation absent identity fraud?

3.      Under Massachusetts General Laws, chapter 93, section 105(a), may the words "credit card transaction form" refer equally to an electronic or a paper transaction form?

(Dkt. No. 27.)

On March 11, 2013, in a landmark ruling, the Supreme Judicial Court answered "'Yes' to the first question, but for different reasons than the judge set forth in the question itself. We also

4

answer 'Yes' to the second and third questions." Tyler v. Michaels Stores, Inc., 464 Mass. 492, 493, 984 N.E.2d 737, 739 (2013).

On or about March 14, 2013, Plaintiff D'Esposito filed a Complaint, styled D'Esposito v. Michaels Stores, Inc., Case No. 13-1-608-WGY, alleging similar allegations to those alleged in the Tyler action. On March 28, 2013, this Court consolidated both actions. On April 29, 2013, this Court entered the Parties' Joint Case Management Schedule, setting the case to be ready for trial in May 2014. (Dkt. No. 53.) On April 29, 2013, Michaels filed its Answers to both the Tyler and D'Esposito Complaints. (Dkt. No. 54-55.) Thereafter, on May 1, 2013, this Court entered Plaintiffs' Proposed Case Management Order appointing Meiselman, Packman, Nealon, Scialabba & Baker P.C. and Denlea & Carton LLP as Co-Lead Counsel and Whatley Kallas, LLC as Liaison Counsel. (Dkt. No. 57.)

Both the Tyler and D'Esposito Complaints allege that Michaels violates Mass. Gen. Laws ch. 93 § 105(a) through its collection of ZIP codes from its customers when they make purchases using credit cards at Michaels retail stores in Massachusetts. The Complaints allege that Michaels' employees do not ask customers for their ZIP codes because the credit card companies require that Defendant do so, nor do Michaels' employees request ZIP codes for verification purposes. Rather, the Complaints allege that Michaels uses a customer's ZIP code and name to "reverse engineer" and identify that customer's address using commercially available databases. The Complaints allege that Michaels is thus able to use that personal identification information for intrusive marketing purposes, which include Michaels' own direct marketing, such as sending marketing mail directly to consumers' homes without their permission.

Plaintiffs contend that the Consolidated Actions have merit. As set forth above, Michaels contends that the Consolidated Actions do not have merit and that Michaels has defenses that

could eliminate or reduce liability and monetary recovery in this case and facts/law that would defeat class certification.

Subsequent to the consolidation of the two cases, the Parties exchanged initial disclosures, and Plaintiffs served Michaels with requests for production and interrogatories. Michaels answered Plaintiffs' Complaints by, among other things, generally and specifically denying the Complaints' allegations that Plaintiffs or the Class have been damaged in any sum whatsoever and that Plaintiffs or the Class are entitled to the relief requested in the Complaints or any other relief.

Counsel for the Settling Parties subsequently conferred dozens of times via email and telephone, during which time they (and their clients) considered their claims and defenses, the potential for liability and the certification of a class, as well as the potential for a fair and reasonable class action settlement. During these discussions, Plaintiffs obtained from Defendant information relating to Michaels' policies and practices with respect to its customers' ZIP codes, as well as the size and composition of the proposed Class. Declaration of Todd S. Garber ("Garber Decl.") ¶¶18-19.

After conducting sufficient discovery such that each side was in a position to evaluate the merits, strengths, and weaknesses of any claims or defenses, the parties agreed to engage in arm's-length settlement negotiations. Leading up to and including the settlement negotiations, the Settling Parties each examined the uncertainties of trial and the benefits to be obtained under a settlement, and they have each considered the costs, risks, and delays associated with the continued prosecution of this time-consuming litigation and the likely appeals of any rulings in favor of either Plaintiffs or Michaels. At the end of a long, sometimes contentious day of in-person, arm's length, good faith settlement negotiations in New York among highly experienced

counsel, in which Michaels' General Counsel and Assistant General Counsel actively participated, the parties reached a settlement. Garber Decl. ¶¶ 20-21. After the Settlement was reached, the Settling Parties drafted and executed the Settlement Agreement and Release.

**Summary of Proposed Settlement**

Under the Settlement, the Class is divided into two sub-classes. The first sub-class ("sub-class one") includes known consumers from whom Michaels requested and recorded personal identification information in conjunction with a credit card and/or debit card transaction in a Massachusetts retail store after May 23, 2007, and for whom Michaels maintains a mailing address that was solely obtained by a ZIP code append. Sub-class one totals approximately 15,000 Class members. The second sub-class ("sub-class two") includes known consumers from whom Michaels also requested and recorded a ZIP code in conjunction with a credit card and/or debit card purchase transaction in a Massachusetts retail store after May 23, 2007, but for whom Michaels obtained a mailing address from a source other than a ZIP code append. Sub-class two totals approximately 4,300 Class members. All Class members shall receive direct mail notice.

Class members in sub-class one shall automatically receive a Twenty-Five Dollar ($25.00) Cash Value Voucher which can be used on a single occasion at any Michaels retail store in Massachusetts to purchase any item or service available. The $25.00 Cash Value Voucher can be combined with other discounts and stacked, and the Cash Value Voucher is freely transferable. The total cash value of these $25.00 Cash Value Vouchers is approximately $375,000.00.

Class Members in sub-class two shall automatically receive a Ten Dollar ($10.00) Cash Value Voucher which can be used one time at any Michaels retail store in Massachusetts to purchase any item or service available. The $10.00 Cash Value Voucher can be combined with

other discounts and stacked, and the Cash Value Voucher is freely transferable. The total cash value of these $10.00 Cash Value Vouchers is approximately $43,000.00. Based on the size of the two sub-classes, the total value of the Settlement is estimated to be $418,000.00.

The Settlement also provides that Michaels agrees to comply with the provisions of M.G.L. c. 93 sec. 105 in its Massachusetts retails stores. In addition, Michaels has agreed to take reasonable steps to purge and/or delete all consumer addresses appended from solely a ZIP code obtained at the point-of-sale during a credit and/or debit card transaction since May 23, 2007, within ninety (90) days after the Final Judicial Approval of the Settlement.

The Settling Parties have further agreed that Plaintiff Tyler will be entitled to apply to the Court for an incentive award of up to Five Thousand Dollars ($5,000.00) and that Plaintiff D'Esposito will be entitled to apply for an incentive award of up to Two Thousand Five Hundred Dollars ($2,500.00) in recognition of the time and effort spent by the Plaintiffs as the Class Representatives. Michaels has agreed to pay such incentive awards if approved by the Court. These amounts will be paid separate from and in addition to the amount that Michaels has agreed to pay to Class members, and will in no way diminish the Class recovery.

Furthermore, subject to Court approval, the Settling Parties reached an agreement on attorneys' fees and costs to be paid by Michaels. Pursuant to the Settling Parties' agreement, Class Counsel will be entitled to apply for attorneys' fees and costs up to Four Hundred Twenty Five Thousand Dollars ($425,000.00) to which Michaels will not object. Subject to Court approval, Michaels has agreed to pay this amount. The attorneys' fees and expense reimbursement will in no way diminish the recovery of the Class.

The Settlement Agreement and its supporting papers provide for the form and manner of class notice, the procedures for seeking exclusion from the Class or objecting to any terms of the

Settlement, and the procedure by which Class Counsel shall apply for attorneys' fees and reimbursement of expenses incurred by Class Counsel in prosecuting this Action and the representative plaintiffs' requests for incentive awards. Final approval of the Settlement will result in the dismissal with prejudice of the Actions in their entirety.

**ARGUMENT**

**I.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE SETTLEMENT BECAUSE IT IS WITHIN THE RANGE OF VALUES WARRANTING APPROVAL.**

Courts consistently recognize "the clear policy in favor of encouraging settlements," especially in the class action context. Durrett v. Providence Hous. Auth., 896 F.2d 600, 604 (1st Cir. 1990) (internal quotation marks omitted) (reversing denial of approval of class action settlement as an abuse of discretion). Moreover, public policy in the First Circuit highly favors settlement as a means of resolving disputes. See Hotel Holiday Inn de Isla Verde v. N.L.R.B., 723 F.2d 169, 173 n.1 (1st Cir. 1983) ("[S]ettlement agreements … will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits." (internal quotation marks omitted)); United States v. Comunidades Unidas Contra La Contaminacion, 204 F.3d 275, 280 (1st Cir. 2000). This is especially so in the context of complex class-action litigation. See, e.g., Lazar v. Pierce, 757 F.2d 435, 440 (1st Cir. 1985) ("Last, we should point to the overriding public interest in favor of the voluntary settlement of disputes, particularly where class actions are involved."); In re Lupron Mktg. & Sales Practices Litig., 228 F.R.D. 75, 88 (D. Mass. 2005) ("[T]he law favors class action settlements."); Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 116 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context." (internal quotation marks omitted)).

By favoring the settlement of complex class-action litigation, the law seeks to minimize the litigation expense on both sides, and to reduce the strain on judicial resources. See, e.g., Lazar, 757 F.2d at 440; In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig., 55 F.3d 768, 784 (3rd Cir. 1995) ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."); Newberg On Class Actions, 2 Newberg & Conte § 11.41.

In order to approve a proposed class action settlement, a court generally follows two steps:

> [T]he judge is required to scrutinize the proposed settlement to ensure that it is fair to the persons whose interests the court is to protect. Those affected may be entitled to notice and an opportunity to be heard. This usually involves a two-stage procedure. First, the judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing. If so, the final decision on approval is made after the hearing.

In re Relafen Antitrust Litig., 231 F.R.D. 52, 57 (D. Mass. 2005) (quoting Manual For Complex Litigation, Fourth ("MCL") § 13.14); see also In re Lupron Mktg. & Sales Practices Litig., 345 F. Supp. 2d at 138 ; Hochstadt v. Boston Scientific Corp., 708 F. Supp. 2d 95, 97 n.1 (D. Mass. 2010) ("[T]he approval of a settlement agreement is a two-step process, which first requires the court to make a preliminary determination regarding the fairness, reasonableness, and adequacy of the settlement terms.").

At the preliminary approval stage, the Court is not required to undertake an in-depth consideration of the relevant factors for final approval. Instead, the "judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." MCL § 21.632. The Court need only find that there is "probable cause

to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." In re Traffic Executive Ass'n, 627 F.2d 631, 634 (2d Cir. 1980) (internal quotation marks omitted); see also Scott v. First Am. Title Ins. Co., No. 06-286, 2008 WL 4820498, at *3 (D.N.H. Nov. 5, 2008) ("For purposes of preliminary approval, the court considers whether the proposed settlement is illegal or collusive."). If the court finds a settlement proposal "within the range of possible approval," In re Gilat Satellite Networks, Ltd., No. 02-1510, 2007 WL 1191048, at *9 (E.D.N.Y. Apr. 19, 2007), it then proceeds to the second step in the review process, the fairness hearing. See id., at *12.

In deciding whether preliminary approval is warranted, "there is generally a presumption in favor of settlement '[i]f the parties negotiated at arm's length and conducted sufficient discovery.'" Hochstadt, 708 F. Supp. 2d at 107 (quoting In re Pharm. Indus. Average Wholesale Price Litig., 588 F.3d 24, 32-33 (1st Cir. 2009)). Thus, "[p]reliminary approval of a proposed settlement is appropriate where it is the result of serious, informed, and non-collusive negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies . . . and where the settlement appears to fall within the range of possible approval." In re Gilat, 2007 WL 1191048, at *9 (citing MCL § 30.41 and In Re Med. X-ray Film Antitrust Litig., No. 93-5904, 1997 WL 33320580, at *6 (E.D.N.Y. Dec. 26, 1997)). Applying the approach set forth above, the Court should preliminarily approve the Settlement because it is fair, reasonable, and adequate, and thus falls squarely within the range of possible approval.

First, the Settlement amount of $418,000.00 for the Class, approximately $30,000 in administration costs and up to $425,000.00 in attorneys' fees and expenses, representing a total settlement value of nearly $875,000.00, represents a fair and reasonable result. During the Settling Parties' settlement negotiations, each side vigorously advocated their positions, as

described above. The estimated Settlement amount of $875,000.00 reflects, among other things, the size of the sub-classes and the manner in which Michaels obtained the addresses of class members – i.e., through the use of the customer's Zip Code alone or by some other information. At the same time, the Settlement recognizes the inherent risks, costs, and potential for delay associated with a complex class-action litigation.

Second, the proposed Settlement is the result of intensive, arm's-length negotiations between the Settling Parties. This factor militates strongly in favor of preliminary approval of the settlement. Hochstadt, 708 F. Supp. 2d. at 107 ("[T]here is generally a presumption in favor of settlement '[i]f the parties negotiated at arm's length and conducted sufficient discovery.'" (quoting In re Pharm., 588 F.3d at 32-33.)). "A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" Wal-Mart Stores, 396 F.3d at 116 (quoting MCL (Third) § 30.42 (1995)).

Where a settlement is achieved through arm's-length negotiations by experienced counsel and there is no evidence of fraud or collusion, "[courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." In re EVCI Career Colleges Holding Corp. Sec. Litig., No. 05-10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007); see also Walsh v. Great Atl. and Pac. Tea Co., 96 F.R.D. 632, 642-43 (D.N.J. 1983) ("[A] court should be slow to substitute its own judgment for that of experienced counsel who, as here, have arrived at a settlement after extensive litigation and a careful assessment of the risks and potential rewards involved in a full trial and appeal."), aff'd, 726 F.2d 956 (3d Cir. 1983); In re Sumitomo Copper Litig., 189 F.R.D. 274, 280-81 (S.D.N.Y. 1999) ("[A] presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length

negotiations between experienced, capable counsel after meaningful discovery." (internal quotation marks omitted)).

Moreover, the fact that the Settlement Agreement provides for a prompt, automatic payment to class members, with no claim form to be filled out and returned, favors approval of the settlement because this mechanism will greatly increase the likelihood that class members will actually use the Cash Value Vouchers they receive. See Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd., No. 01-11814, 2004 WL 1087261, at *5 (S.D.N.Y. May 14, 2004) ("[T]he proposed Settlement provides for payment to Class members now, not some speculative payment of a hypothetically larger amount years down the road. '[M]uch of the value of a settlement lies in the ability to make funds available promptly.'" (quoting In re Agent Orange Prod. Liab. Litig., 611 F. Supp. 1396, 1405 (E.D.N.Y. 1985) (modified on other grounds))).

Third, the Settling Parties agreed to the terms of the Settlement after conducting adequate discovery to determine how and when Michaels used ZIP code information to reverse append class members' addresses, the size of the class, and the damages they suffered. There is a presumption in favor of a proposed settlement when the parties have conducted sufficient discovery to allow them to investigate the pertinent factual and legal issues and to assess the merits of their respective cases. City P'ship Co. v. Atlantic Acquisition L.P., 100 F.3d 1041, 1043 (1st Cir. 1996); Rolland v. Celluci, 191 F.R.D. 3, 6 (D. Mass. 2000). In this case, Plaintiffs' counsel was provided sufficient discovery by Defendant such that Plaintiffs could assess the extent to which Michaels' practices violated Massachusetts law, and counsel also researched the claims against Defendant for many months prior to the settlement negotiations. As a result of these efforts, Plaintiffs were able to develop the facts concerning Defendant's potential liability necessary to engage in settlement discussions, and the Settling

Parties and their counsel were capable of making well-informed decisions regarding the Settlement.

Fourth, the Settling Parties are represented by counsel highly experienced in class-action litigation. Co-Lead Counsel have extensive experience and expertise in complex litigation and class-action proceedings throughout the United States. Garber Decl. ¶¶ 26-32; Carton Decl. ¶¶ 24-28. Counsel for Defendant has similarly extensive expertise in complex consumer litigation throughout the United States as well.

For all of these reasons, Plaintiffs respectfully request that the Court preliminarily approve the Settlement. See Hawkins ex rel. Hawkins v. Comm'r of New Hampshire Dep't of Health & Human Servs., No. 99-143, 2004 WL 166722, at *5 (D.N.H. Jan. 23, 2004) ("A presumption in favor of the proposed settlement arises when sufficient discovery has been provided, counsel have experience in similar cases, and the parties have bargained at arm's-length.").

## II.     THE COURT SHOULD PRELIMINARILY CERTIFY THE CLASS.

In granting preliminary settlement approval, the Court should also preliminarily certify the Class for purposes of the Settlement. In order to maintain a class action, plaintiffs must demonstrate that the class meets all four requirements of Rule 23(a): (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy). See Smilow v. Southwestern Bell Mobile Svs., 323 F.3d 32, 38 (1st Cir. 2003). In addition, the case must fit into one or more of the categories enumerated in Rule 23(b). Mack v.

14

Suffolk County, 191 F.R.D. 16, 22 (D. Mass. 2000); see also In re Community Bank of Northern Va., 418 F.3d 277, 299 (3d Cir. 2005) ("'[A]ll Federal Circuits recognize the utility of Rule 23(b)(3) settlement classes' as a means to facilitate the settlement of complex nationwide class actions." (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 618 (1997))).

## A.    The Prerequisites Of Rule 23(a) Are Satisfied.

### 1.    The Settlement Class Is Sufficiently Numerous.

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is impracticable. Fed. R. Civ. P. 23(a)(1); Guckenberger v. Boston Univ., 957 F. Supp. 306, 325 (D. Mass. 1997). Courts in this district have typically held that a "40 person class is generally found to establish numerosity." McLaughlin v. Liberty Mut. Ins. Co., 224 F.R.D. 304, 307 (D. Mass. 2004) (internal quotation marks omitted); see also McAdams v. Mass. Mut. Life Ins. Co., 2002 WL 1067449, at *3 (D. Mass. May 15, 2002). Here, Class membership is approximately 19,300. Thus joinder of all members would be impracticable.

### 2.    There Are Common Questions Of Law And Fact.

Rule 23(a)(2) requires the existence of questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). This "commonality" requirement is satisfied if "common questions of law or fact exist and class members' claims are not in conflict with one another ...." Mack, 191 F.R.D. at 23. The commonality requirement "does not require that class members' claims be identical," id., and "[a] *single* common legal or factual issue can suffice." Payne v. Goodyear Tire & Rubber Co., 216 F.R.D. 21, 25 (D. Mass. 2003). "Thus, the commonality requirement ordinarily is easily met." Id. (citing Duhaime v. John Hancock Mut. Life Ins. Co., 177 F.R.D. 54, 63 (D. Mass. 1997) (describing commonality as a "low hurdle")). Further, "[t]he threshold of

commonality is not a difficult one to meet, especially when there are a number of common issues of fact and law that the class members would be required to establish to prove the defendants' liability, as well as their entitlement to damages." In re Transkaryotic Therapies, Inc. Sec. Litig., No. 03-10165, 2005 WL 3178162, at *2 (D. Mass. Nov. 28, 2005) (internal quotation marks omitted).

Here, there are numerous common legal and factual issues, and the same facts giving rise to the Plaintiffs' claims give rise to the rest of the Class' claims. Indeed, Class members would have to prove identical facts and answer identical questions were they to pursue their claims individually. The common legal and factual issues include, among others:

i.     whether Defendant violated Mass. Gen. Laws ch. 93 § 105(a), thereby violating Mass. Gen. Laws ch. 93A § 2;

ii.     whether Plaintiffs and the Class have sustained damages and, if so, the proper measure thereof; and

iii.     whether Defendant should be enjoined from collecting ZIP codes from consumers using credit cards and/or debit cards.

Thus, commonality is readily satisfied by the similarity of the experiences of the Plaintiffs and other Class Members.

**3.     The Class Representatives' Claims
Are Typical Of Those Of The Settlement Class.**

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This requirement is similar to commonality and is also "not highly demanding because the claims only need to share the same essential characteristics, and need not be identical." Payne, 216 F.R.D. at 26 (internal quotation marks omitted). "As with the commonality requirement, the typicality requirement

does not mandate that the claims of the class representative be identical to those of the absent class members." Swack v. Credit Suisse First Boston, 230 F.R.D. 250, 260 (D. Mass. 2005); See also Abelson v. Strong, MDL No. 584, No. 85-0592, 1987 WL 15872, at *2 (D. Mass. July 30, 1987) ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met. Seen in this light, the burden on plaintiffs in proving typicality is not very substantial." (citations and internal quotation marks omitted)); Priest v. Zayre Corp., 118 F.R.D. 552, 555 (D. Mass. 1988) ("With respect to typicality under Rule 23(a)(3), plaintiffs need not show substantial identity between their claims and those of absent class members, but need only show that their claims arise from the same course of conduct that gave rise to the claims of the absent members. The question is simply whether a named plaintiff, in presenting his case, will necessarily present the claims of the absent plaintiffs." (citation and internal quotation marks omitted)).

Where the class representatives' injuries "arise from the same events or course of conduct as do the injuries that form the basis of the class claims, and when the plaintiff's claims and those of the class are based on the same legal theory," the typicality requirement is satisfied. Swack, 230 F.R.D. at 260 (internal quotation marks omitted); see also Payne, 216 F.R.D. at 26. Here, the claims of the Plaintiffs, the proposed Class Representatives, involve questions of law and fact typical, if not identical, to the claims of other Class members. The gravamen of Plaintiffs' claims is that they, like the rest of the Class, had their personal identification information wrongfully collected by Michaels in violation of Mass. Gen. Laws ch. 93 § 105(a) and ch. 93A § 9.

The claimed injuries to Plaintiffs and the members of the Class are attributable to the same alleged course of conduct by the Defendant, and liability for this conduct is predicated on the same legal theories. As such, the Rule 23(a)(3) typicality requirement is satisfied.

4. **Plaintiffs And Co-Lead Counsel Will Fairly And Adequately Protect The Interest Of The Class.**

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Court must measure the adequacy of representation by two standards: (1) whether the plaintiffs' counsel are qualified, experienced, and generally able to conduct the litigation; and (2) whether the class representative has interests antagonistic to those of the class. See In re Transkaryotic Therapies, 2005 WL 3178162, at *4.

Here, Co-Lead Counsel have already been appointed by this Court to lead this litigation, have extensive experience and expertise in consumer class-action proceedings throughout the United States, and are well-qualified and able to conduct this litigation. In fact, Co-Lead Counsel likely have more experience than any other attorneys regarding claims brought for violations of Mass. Gen. Laws ch. 93 § 105 and ch. 93A § 9 because they are the counsel who litigated and won the issue before the Supreme Judicial Court in connection with this case. Garber Decl. ¶ 30. Carton Decl. ¶ 2.

Moreover, Plaintiffs and the Class share the common goal of maximizing recovery, and there is no conflict between them. Rule 23(a)(4) is therefore satisfied.

B. **The Class Claims Satisfy The Prerequisites Of Rule 23(b)(3).**

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently

adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These requirements are easily met in this case.

### 1. Common Legal And Factual Questions Predominate.

"Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." In re Livent, Inc. Noteholders Sec. Litig., 210 F.R.D. 512, 517 (S.D.N.Y. 2002) (internal quotation marks omitted) (common issues predominate where "each class member is alleged to have suffered the same kind of harm pursuant to the same legal theory arising out of the same alleged course of conduct [and] [t]he only individualized question concerns the amount of damages"); In re Transkaryotic Therapies, 2005 WL 3178162, at *2 ("where . . . common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied even if individual damages issues remain." (internal quotation marks omitted)).

Here, all the Class members' claims against Defendant are based on the same alleged course of conduct by the Defendant. There are numerous common issues relating to the Defendant's liability which predominate over any individualized issues. The predominance requirement of Rule 23(b)(3) is therefore satisfied.

### 2. A Class Action Is Superior To Other Methods Of Adjudication.

Rule 23(b)(3) sets forth the following non-exhaustive factors to be considered in making a determination of whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class

members; (C) the desirability . . . of concentrating the litigation of the claims in the particular

forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A-D).

Considering these factors, this class action is clearly "superior to other available methods for the

fair and efficient adjudication" of the claims of the large number of Michaels consumers who

Plaintiffs allege were misled into providing their ZIP code to Michaels.  Plaintiffs are unaware of

any other litigation already commenced by individual Class members, which is not surprising

given the tremendous costs associated with such litigation.  Absent the class-action device, "the

very real risk [is] that potential class members with relatively small claims would not have the

financial incentives or wherewithal to seek legal redress for their injuries."  In re Transkaryotic

Therapies, 2005 WL 3178162, at *2 (internal quotation marks omitted).

The size of Plaintiffs' individual claims against Defendant, together with the

disproportionate cost of individualized litigation, make it unlikely that the vast majority of Class

members would be able to seek relief without class certification.  Moreover, it is clearly

desirable to concentrate the claims of all Class members in this forum, and Plaintiffs do not

foresee any difficulties in the management and settlement of this action as a class action.

Accordingly, the requirements of Rule 23(b)(3) are satisfied, and the Court should

preliminarily certify this action as a class action on behalf of the proposed Class for settlement

purposes only.

III.    **THE FORM AND CONTENT**
**OF THE PROPOSED NOTICE TO THE CLASS ARE SUFFICIENT.**

In order to afford class members the opportunity to object to, or opt out of, a proposed

class-wide settlement, reasonable notice must be provided to those class members.  Durrett, 896

F.2d at 604.  Where a proposed settlement is coupled with a request for class certification under

Rule 23(b)(3) of the Federal Rules of Civil Procedure, class notice must meet the requirements of

both Rules 23(c)(2) and 23(e).  In terms of the form and manner of providing notice, Rule

23(e)(1) instructs courts to "direct notice in a reasonable manner to all class members who would

be bound by the Proposal," while Rule 23(c)(2)(B) requires the notice to be the "best notice that

is practicable under the circumstances, including individual notice to all members who can be

identified through reasonable effort."  Here, Michaels has the actual addresses of all Class

Members, and they will all receive direct mailed notice of the summary notice.  In addition, a

more detailed long form notice will be posted on the Internet on a website established for the

purpose of helping effectuate this Settlement.  The mailed summary notice will direct Class

Members to the website and the long form notice should they wish to obtain further details about

the Settlement.

The content of a class notice in is governed by Rule 23(c)(2)(B).  Rule 23(c)(2)(B)

requires that the notice:

> clearly and concisely state in plain, easily understood language: (i)
> the nature of the action; (ii) the definition of the class certified; (iii)
> the class claims, issues, or defenses; (iv) that a class member may
> enter an appearance through an attorney if the member so desires;
> (v) that the court will exclude from the class any member who
> requests exclusion; (vi) the time and manner for requesting
> exclusion; and (vii) the binding effect of a class judgment on
> members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).  In the present case, both the form and content of the proposed

notices to the Class are sufficient and should be approved by the Court.

The proposed notices and procedure for disseminating them satisfy each of these

requirements.  The notices, attached as Exhibits 1 and 2 to the Garber Declaration, will advise

Class Members of the essential terms of the Settlement.  Additionally, Class members will be

informed that the more detailed long form notice is available on a website operated by the

Settlement Administrator.  The notice to be published on the Settlement Administrator's website

also sets forth the procedure for objecting to the Settlement and for opting out of the monetary component of the Settlement, and it provides specific information concerning the date, time and place of the Final Approval Hearing. Accordingly, the detailed information in the jointly proposed notices is more than adequate to put Class members on notice of the proposed Settlement and is well within the requirements of Rule 23.

The mailing of summary notice and the posting of a more detailed notice on the Settlement Administrator's website are well-established means of providing legally sufficient notice. See, e.g., Fidel v. Farley, 534 F.3d 508, 514-15 (6th Cir. 2008) (notice program "comported with the requirements of both due process and Rule 23(c)(2)(B)" where notice was mailed to brokerage houses and summary notice was published on the internet); In re Warner Chilcott Ltd. Sec. Litig., No. 06-cv-11515, 2008 WL 5110904, at *3 (S.D.N.Y. Nov. 20, 2008) (same).

The Settling Parties believe that because the proposed notices fairly apprise Class members of their rights with respect to the Settlement, the notices represent the best notice practicable under the circumstances and they comply with Rule 23 and due process. Therefore, the Court should approve the proposed form of notice.

## IV. PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL.

Rule 23(g) governs the standards and framework for appointing class counsel for a certified class, and sets forth four criteria the district court must consider in evaluating the adequacy of proposed counsel: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. Fed. R. Civ. P.

23(g)(2). The Court may also consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(g)(1)(B). "No single factor should necessarily be determinative in a given case." Fed. R. Civ. P. 23(g) advisory committee note. This Court has already considered many of these factors when it appointed Plaintiffs' counsel as Co-Lead Counsel, and it should not hesitate to now appoint them as Class Counsel.

Information relevant to each of these criteria is set forth in the accompanying declarations of Todd Garber of Meiselman Packman and Jeffrey I. Carton of Denlea & Carton LLP, Co-Lead Counsel and proposed Class Counsel. Garber Decl. ¶¶ 26-32; Carton Decl. ¶¶ 24-28. As the accompanying declarations demonstrate, Co-Lead Counsel have had very substantial experience in handling class actions and other complex litigation, including consumer fraud class actions.

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court grant

preliminary approval of the proposed Settlement; preliminarily certify the proposed Class for

settlement purposes; approve the Notices of Settlement; approve the schedule for the final

settlement approval process; preliminarily appoint Co-Lead Counsel as Class Counsel, and enter

the accompanying proposed Preliminary Approval Order.

Dated: White Plains, New York
       January 15, 2014

                    Respectfully submitted,

                    **MEISELMAN, PACKMAN, NEALON,**
                    **SCIALLABA & BAKER P.C.**

                    By:  */s/ D. Greg Blankinship*
                       D. Greg Blankinship (BBO #655430)
                       Todd Garber (admitted *pro hac vice*)
                       1311 Mamaroneck Avenue,
                       White Plains, New York 10605
                       Tel: (914) 517-5000
                       gblankinship@mpnsb.com
                       tgarber@mpnsb.com

                    **DENLEA & CARTON LLP**

                    By:  */s/* Robert J. Berg
                       Jeffrey I. Carton (admitted *pro hac vice*)
                       Robert J. Berg (admitted *pro hac vice*)
                       One North Broadway, Suite 509
                       White Plains, New York 10601
                       Tel: (914) 920-7400
                       jcarton@denleacarton.com
                       rberg@denleacarton.com

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent via U.S. first class mail to those indicated as non-registered participants.

*/s/ Jeffrey I. Carton*